DECISION
{¶ 1} Defendant appellant Kelly Richards appeals his convictions for aggravated robbery[1] and robbery,[2] arguing that the trial court erred by (1) overruling his motion to suppress eyewitness identification; (2) allowing a conviction on insufficient evidence; (3) allowing a conviction against the weight of the evidence; (4) failing to grant his motion for an acquittal; (5) imposing more than the minimum sentence; and (6) failing to keep the written jury instructions in the record. These assignments are without merit.
 I. A Holdup, An Identification, A Conviction {¶ 2} During the early morning hours of May 9,2005, Kevin McRae and Jason Crenshaw left a downtown Cincinnati bar after it closed. They walked uptown to find a store that sold cigarettes. McRae said they walked to 12th and Vine Streets, where they remembered a 24-hour store, but the business was gone.They then proceeded to another store at 15th and Vine.After buying cigarettes, McRae and Crenshaw began walking down 14th Street towards Washington Park.
 {¶ 3} As they walked, they noticed two men walking in front of them. Crenshaw called out and asked the men whether either of them had a cigar he could buy. One of the men offered to sell Crenshaw a cigar. Crenshaw told him that he would buy it for a dollar. But when Crenshaw reached into his pocket, he realized that he did not have any one-dollar bills and asked if the man had change. The man said he did, but instead of pulling out money, he pulled a gun from his back pocket.
 {¶ 4} The man held the gun to McRae's head and took the wallet from McRae's pocket. He ordered McRae to walk away and threatened to shoot him if he turned around.
 {¶ 5} When McRae had gone a certain distance, he turned around and saw the two men rifling through his wallet and throwing its contents to the ground. Crenshaw called 911 from his cellular phone, and both he and McRae described the two men to the dispatcher, stating that they were at 12th and Race.
 {¶ 6} Cincinnati Police Officer Vincent George testified that after he heard the description of the suspects over his radio, he spotted two men near 15thand Vine — three and a half blocks from the ho ldup — who matched the description McRae had given the dispatcher. He pulled his cruiser alongside the two men as they reached an apartment building at 15th and Republic. Officer George got out of his car and ordered the men to stop. The two men ignored the order and ran into the building. As the men fled into the building, Cincinnati Police Officer Brendan Rock arrived on the scene and recognized one of the men as Richards.
 {¶ 7} While the two men barricaded themselves in an apartment, Officer Rock retrieved a photograph of Richards from Cincinnati Police District One headquarters. When he returned, he showed this picture to McRae. McRae confirmed that Richards was one of the two men who had stolen his wallet.
 {¶ 8} After 23 minutes, Richards and another man were convinced by Richards's father to surrender themselves. Officer Rock ordered them to stand where they could be seen by McRae, who was sitting in a police cruiser. McRae identified the two men as the men who had robbed him. The police subsequently searched the apartment, but did not recover the $400 that McRae had claimed was in the wallet. They did recover a BB gun.
 {¶ 9} The second man was later identified as Jason Mays. At trial, McRae identified Mays as the man who had held the gun to his head while Richards acted as the "lookout." He also testified that theBB gun recovered was the gun that Mays had held to his head.
 {¶ 10} Richards and Mays were both charged with aggravated robbery and robbery and tried jointly. After their motion to suppress was denied, a jury found both defendants guilty. Richards was sentenced to three years' incarceration for aggravated robbery, and the robbery was merged for purposes of sentencing. This appeal followed.
 II. Motion to Suppress {¶ 11} In his first assignment of error, Richards argues that the trial court erred by overruling his motion to suppress.Richards contends that the initial identification by McRae through the use of his mug shot was unnecessarily suggestive and unreliable. He also asserts that the subsequent in-person identification of him under a streetlight was unreliable.Richards is incorrect.
 {¶ 12} Appellate review of a suppression ruling involves mixed questions of law and fact.[3] When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence.[4] An appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence.[5] But the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard.[6]
 {¶ 13} The crucial issue with a "one-on-one showup" is whether there is a"very substantial likelihood of misidentification."[7] In evaluating whether an identification procedure was impermissibly suggestive, a court must look to the totality of the circumstances, including (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior descriptionof the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.[8]
 {¶ 14} And the Ohio Supreme Court has noted that "there is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. * * * [P]olice action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh."[9]
 {¶ 15} Here, McRae testified that he saw the suspects while they were close to him during the robbery. During the 911 call, McRae described one of the suspects as a light-skinned African-American with braids who was wearing a red shirt, and the other suspect as bald and wearing a white shirt with black shorts. But when Richardsand Mays came out of the apartment, both were wearing white T-shirts and dark blue-jean shorts. And the police could not find the $400 that McRae stated was stolen.
 {¶ 16} Despite the inconsistencies in the T-shirt descriptions, McRae stated that he was certain that Richards was one of the robbers when Officer Rock showed him Richards's picture. McRae also confirmed that Richards and Mays were the robbers when they emerged from the apartment building. McRae showed no hesitancy in his identification, stating that he was "one thousand percent" certain.
 {¶ 17} Under the totality of the circumstances, McRae's identification was reliable. McRae was able to provide police with an immediate description of the perpetrators. This description led to the police seeing two men flee into an apartment building only three and a half blocks away. The police were able to obtain a mug shot of one of the men seen entering the apartment building, and McRae positively identified Richards within minutes of the robbery. And after the 23-minute standoff, McRae confirmed that Richards and Mays were the two men who had robbed him just 30 minutes before. Because of the proximity in time between the crime and the identification, and the certainty with which McRae identified Richards and Mays, the identification was reliable. Thus, the trial court did not err in denying the motion to suppress, and Richards's first assignment of error is overruled.
 III. Sufficiency and Weight of the Evidence {¶ 18} In his second assignment of error, Richards argues that there was insufficient evidence to find him guilty of aggravated robbery and robbery.He further claims that his conviction was against the manifest weight of the evidence and that the trial court erred by denying his Crim.R. 29 motion for an acquittal.
 {¶ 19} When reviewing the sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the state. We must then determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[10]
 {¶ 20} A review of the weight of the evidence puts the appellate court in the role of a "thirteenth juror."[11] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[12] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[13]
 {¶ 21} And the standard of review for the denial of a Crim.R. 29(A) motion to acquit is the same as the standard of review for the sufficiency of the evidence. A motion for a judgment of acquittal should not be granted when reasonable minds can reach different conclusions as to whether each element of the crime charged has been proved beyond a reasonable doubt.[14]
 {¶ 22} In this case, Richards was found guilty of aggravated robbery and robbery. The aggravated-robbery statute prohibits a person from attempting to commit a theft offense while having a deadly weapon and either displaying, brandishing, possessing, or indicating that the person possesses the weapon.The robbery statute prohibits a person from committing a theft offense with a deadly weapon on about the person or under the person's control.
 {¶ 23} In the present case, the state presented the testimony of McRae, Officer George, and Officer Rock. McRae testified that two men had approached him when his friend Crenshaw asked if they had a cigar they would sell him. He then stated that one of the men had pulled a black handgun from his back pocket and had placed the gun to his head. The man with the gun demanded that McRae empty his pockets. When McRae did not move, this man reached into McRae's pocket and took his wallet. The man with the gun then ordered McRae and Crenshaw to walk away without turning back. McRae said that the other man had stayed back during the robbery, "as if he was the lookout man."
 {¶ 24} McRae then testified that he had walked away and had then called 911 to report the robbery. McRae stated that he had made this call while watching the two men throw the contents of his wallet on the street. When he retrieved the items after the two men had walked away, $400 in cash was missing.
 {¶ 25} McRae further testified that while he sat in a police cruiser, Officer Rock showed him Richards's picture. McRae identified Richards as one of the two perpetrators. And when Richards and Mays exited from the apartment building on 15th and Republic, McRae confirmed that they were the two men who had robbed him. "There were street lights on, * * * I have very, very good vision * * * I wouldn't put this on someone if it wasn't a hundred percent true. When the man put the gun to my head, I seen that man's face."
 {¶ 26} These facts demonstrated that Mays had used a deadly weapon to threaten McRae during the commission of a theft offense, and that Richards had aided and abetted Mays in this action. Both men were found minutes later, fleeing into an apartment building only three and a half blocks away. And McRae identified not only Richards and Mays as the perpetrators but also the BB gun found in the apartment as the gun used during the theft.
 {¶ 27} We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that Richards had committed aggravated robbery and robbery. Therefore, the evidence presented was legally sufficient to sustain the guilty verdicts.And the trial court did not err in overruling Richards's Crim.R. 29(A) motion.
 {¶ 28} Although there were some discrepancies as to the color of the T-shirts that the perpetrators had worn and what Richards and Mays had worn while exiting from the apartment building (there was a 23-minute period in which they could have changed their shirts), our review of the record does not persuade us that the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding Richards guilty of aggravated robbery and robbery. Therefore, his convictions were not against the manifest weight of the evidence.
 {¶ 29} Richards's second assignment of error is thus overruled.
 IV. Sentencing {¶ 30} Richards's third assignment of errorchallenges the imposition of more than the minimum sentence. He argues that the court's sentence of three years violated his due-process rights guaranteed by the Sixth
and Fourteenth Amendments to the United States Constitution, and Sections Five and Sixteen, Article I, of the Ohio Constitution. Richards believes that when a defendant is convicted of a first degree felony for which there is a presumption of imprisonment in the absence of factual findings under R.C. 2929.13(D), the defendant is denied due process and the right to a jury trial because the presumption should not take the place of a factual finding made by a jury.
 {¶ 31} But the problem with Richards's argument is that he did not receive a sentence more than the minimum. Richards received a three-year sentence, the minimum for a first-degree felony. Therefore, there were no judicial findings of the sort held unconstitutional in State v.Foster.[15] His assignment of error is thus overruled.
 V. Written Jury Instructions {¶ 32} In his fourth assignment of error, Richards claims that the trial court erred by failing to keep its written jury instructions on file with the other original papers in the case. Richards's argument is without merit because the jury instructions were placed in the evidence file. Thus, his fourth assignment of error is overruled and the trial court's judgment is affirmed.
Judgment affirmed.
HILDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] R.C. 2911.01(A)(1).
[2] R.C. 2911.02.
[3] See State v. Burnside (2003), 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[4] See State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583.
[5] Burnside, supra, at ¶ 8.
[6] Id., citing State v. McNamara (1997), 124 Ohio App.3d 706,707 N.E.2d 539.
[7] See Neil v. Biggers (1972), 409 U.S. 188, 199-200,93 S.Ct. 375.
[8] Id.
[9] See State v. Madison (1980), 64 Ohio St.2d 322, 332,415 N.E.2d 272, quoting Bates v. United States (C.A.D.C.1968), 405 F.2d 1104,1106.
[10] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[11] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541. .
[12] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211. .
[13] Id.
[14] See Crim.R. 29; see, also, State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[15] See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.