[Cite as *State v. Simpson*, 2011-Ohio-4578.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100789 |
| | | TRIAL NO. B-1002094 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DANIEL SIMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 14, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Derek W. Gustafson*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1} Defendant-appellant Daniel Simpson appeals his conviction for aggravated robbery under R.C. 2911.01(A)(1), along with the accompanying firearm specification. We find no merit in his five assignments of error, and we affirm the trial court's judgment.

## I.   Facts and Procedure

{¶2} The record shows that William Knott and his friend Melvin Lunsford decided to go bar-hopping one evening. That night, Knott met Julie Cooper and eventually exchanged telephone numbers with her. Knott noticed that Cooper seemed to be with two or three other men, one of whom he later identified as Simpson.

{¶3} A short time later, Knott and Lunsford left the bar. While they were driving home, Knott sent text messages to a person he thought was Cooper, but was actually Simpson. Simpson told Cooper that Knott would be calling her, and that she should go where Knott told her to go. When Knott called, he and Cooper arranged to meet at a Kroger store near Knott's home. Knott and Lunsford thought that Cooper was going to have sex with them.

{¶4} Knott met Cooper in the parking lot of the Kroger store. Cooper followed Knott and Lunsford to Knott's home. Simpson and his friends followed Cooper. Once they arrived at Knott's home, Cooper, Knott and Lunsford went to a backyard shed because Knott's live-in girlfriend was asleep in the house.

{¶5} Cooper asked Knott for a drink, and he went inside the house to get it. When he returned, three men kicked in the door of the shed and jumped out at him.

2

One of the men had a shotgun, and demanded the keys to Lunsford's car and other valuables. Cooper ran to her car.

{¶6} Even though he was wearing a bandanna over his face, Knott and Lunsford recognized one of the men as Simpson, whom they had seen earlier in the evening. They stated that Simpson had lifted up the bandanna so that he could see, giving them an unobstructed view of his face.

{¶7} Simpson and his two companions forced Knott and Lunsford to strip and lie down next to each other on the shed floor. Knott's girlfriend heard a commotion and yelled out the window that the police were on their way. The three robbers then fled on foot.

{¶8} Knott and Lunsford chased after the robbers, who ran by a car that Knott believed the three men had been driving. The robbers then jumped into what Knott believed was Cooper's car. Knott and Lunsford got into Knott's girlfriend's car and chased, but subsequently lost, the robbers.

{¶9} The police arrived and looked into the car that Knott and Lunsford believed that the three men had been driving. The trunk was already open, and inside, the police officers saw masks similar to the masks the robbers had worn. The police subsequently towed the car.

{¶10} A few hours later, as the sun was coming up, Knott and Lunsford saw an African-American girl walking down Knott's street. Knott knew that he was the only African-American living in the neighborhood, so he was suspicious. They followed the girl and saw her get into a car in which Simpson was also riding. They called the police, who arrived quickly and stopped the car. Knott and Lunsford identified Simpson, and he was arrested.

{¶11}   Simpson was indicted for aggravated robbery, with accompanying firearm specifications, and robbery.   A jury found him guilty as charged in the indictment.   The trial court merged the robbery count and firearm specifications for sentencing.   It sentenced Simpson to serve a total of eight years' imprisonment.   This appeal followed.

### II.   Improper Civil Jury Instruction

{¶12}   In his first assignment of error, Simpson contends that the trial court erred in instructing the jury.   He argues that the trial court improperly gave an instruction intended for civil trials and, therefore, it misstated the burden of proof and denied him a fair trial.   This assignment of error is not well taken.

{¶13}   A trial court must fully and completely give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and to discharge its duty as the fact-finder.[1]   A single instruction cannot be judged in isolation, but must be viewed in the context of the overall charge.[2]

{¶14}   The trial court instructed the jury that "[y]ou may infer a fact or facts only from other facts and circumstances that have been proven by the greater weight of the evidence, but you may not make inferences from a speculative or remote basis that has not been established by the greater weight of the evidence."   Simpson objected to this instruction as required by Crim.R. 30.[3]

{¶15}   Simpson is correct that this instruction sets forth a civil-trial standard.   The phrase, "greater weight of the evidence," equates with a

---

[1] *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus; *State v. Dieterle*, 1st Dist. No. C-070796, 2009-Ohio-1888, ¶22.
[2] *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus; *Dieterle*, supra, at ¶22.
[3] See *State v. Coley*, 93 Ohio St.3d 253, 266, 2001-Ohio-1340, 754 N.E.2d 1129; *State v. McCrary*, 1st Dist. No. C-080860, 2009-Oho-4390, ¶26.

preponderance of the evidence, and its use in a criminal case is erroneous.[4] Nevertheless, an appellate court will not reverse a conviction due to improper jury instructions unless the defendant was prejudiced.[5]

{¶16}   In this case, the trial court correctly instructed the jury on reasonable doubt.  It told the jury several times that they could not convict Simpson unless they found him guilty beyond a reasonable doubt.  Viewing the instructions as a whole, we hold that Simpson was not prejudiced by the error.[6]

{¶17}   Simpson argues that the instruction allowed the jury to use an inference upon an inference to find that the shotgun used in the robbery was operable.  But the evidence showed that the shotgun was used in a threatening manner consistent with it being operable.[7]  The finding did not require an inference upon an inference.  Consequently, we overrule Simpson's first assignment of error.

### III.  Prior Inconsistent Statements

{¶18}   In his second assignment of error, Simpson contends that the trial court erred in refusing to admit into evidence two tape-recorded telephone conversations between Simpson and Knott.  In those conversations, Knott allegedly asked Simpson for money in exchange for not testifying against him.  Simpson argues that Knott's statements were inconsistent with his trial testimony and should have been admitted as prior inconsistent statements, and as evidence of bias, prejudice and motive to lie.  This assignment of error is not well taken.

---

[4] *State v. Scott*, 7th Dist. No. 07 MA 152, 2009-Ohio-4961, ¶64-66; *State v. Young*, 7th Dist. No. 07 MA 120, 2008-Ohio-5046, ¶23-24; *State v. Doan* (Feb. 28, 2000), 12th Dist. No. CA97-12-014; *State v. Coe* (June 4, 1998), 2nd Dist. No. 13-97-46.
[5] *Dieterle*, supra, at ¶22; *State v. Robinson*, 1st Dist. No. C-060434, 2007-Ohio-2388, ¶18.
[6] See *Scott*, supra, at ¶66-75; *Young*, supra, at ¶25-36; *Doan*, supra; *Coe*, supra.
[7] See *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph one of the syllabus; *State v. Griffin* (Jan. 29, 1999), 1st Dist. No. C-970773.

{¶19} Though there was some argument at trial about whether the tapes were properly authenticated, the record shows that the trial court ultimately excluded the taped conversations under Evid.R. 613(B), which allows for the admission of extrinsic evidence of a prior inconsistent statement when a proper foundation is laid. First, a witness must be afforded an opportunity to explain or deny the statement and then the opposing party must be afforded the opportunity to interrogate the witness on the statement.[8]

{¶20} A proper foundation was laid for the introduction of the taped statements, because Simpson cross-examined Knott about the statements and Knott denied making them. But the subject matter of the extrinsic evidence must also be a "fact that is of consequence to the determination Of the action other than the credibility of a witness."[9] A party may not present extrinsic evidence to contradict a witness on a collateral matter.[10] The decision whether to admit a prior inconsistent statement that is collateral to the issue being tried and pertinent to the credibility of a witness is a matter within the trial court's discretion.[11]

{¶21} In this case, the trial court found that the taped statements went solely to Knott's credibility and involved matters collateral to the robbery itself. We agree. Knott's testimony about the robbery was generally consistent except for some minor details. Further, the attacks on Knott's credibility did not undermine Lunsford's testimony. He also testified about the details of the robbery and identified Simpson as one of the perpetrators. Whether Knott was willing to not testify in exchange for a bribe does not go to the central issue of whether Simpson

---

[8] *State v. Mack*, 73 Ohio St.3d 502, 514-515, 1995-Ohio-273, 653 N.E.2d 329; *State v. Carusone*, 1st Dist. No. C-010681, 2003-Ohio-1018, ¶36; *State v. Davenport* (July 30, 1999), 1st Dist. No. C-980516.
[9] Evid.R. 613(B)(2)(a).
[10] *State v. Wilson*, 2nd Dist. No. 22120, 2008-Ohio-4130, ¶27.
[11] *Carusone*, supra, at ¶37; *State v. Soke* (1995), 105 Ohio App.3d 226, 239, 663 N.E.2d 986.

committed the robbery. Under the circumstances, we cannot hold that the trial court's decision to exclude the evidence was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion.[12]

{¶22} Further, even if the trial court had erred in excluding the taped statements from evidence, that error would not have contributed to the conviction given the quantum of evidence against Simpson. Consequently, any error would have been harmless beyond a reasonable doubt.[13] We overrule Simpson's second assignment of error.

### IV. Hearsay/Relevance

{¶23} In his third assignment of error, Simpson contends that the trial court erred in refusing to allow Simpson to testify about out-of-court statements made by Cooper and another individual, Sean Hall, on the basis that the statements constituted hearsay. He argues that the statements were admissible under Evid.R. 803(3) as statements of the declarants' then existing mental state. While this argument has some merit, we ultimately hold that this assignment of error is not well taken.

{¶24} Evid.R. 803(3) sets forth a hearsay exception for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove a fact remembered or believed[.]" The hearsay statement must point towards the future, rather than the past. Thus,

---

[12] See *State v. Clark*, 71 Ohio St.3d 466, 470, 1994-Ohio-43, 644 N.E.2d 331.
[13] See *Robinson*, supra, at ¶16.

statements of current intent to take future actions are admissible for the inference that the intended act was performed.[14]

{¶25}   Simpson sought to introduce testimony that Cooper and Hall had approached him about a week before the offense and asked him to participate in a robbery.   These statements fall squarely within the exception, and the trial court should have admitted them into evidence if the only issue affecting their admission was whether they were hearsay.

{¶26}   But, in our view, the statements were not relevant to the main issue at trial.   Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence."[15]

{¶27}   The issue before the jury in this case was whether Simpson had participated in the robbery.   Both eyewitnesses testified that Simpson was one of the robbers.   Who had planned the robbery was not of consequence to the determination of Simpson's guilt in participating in it.    Therefore, the statements were irrelevant and not admissible into evidence.[16]   Consequently, the trial court did not err in excluding them.

{¶28}   Even if the court did err, Simpson was able to present evidence to the jury through cross-examination of the state's witnesses and the testimony of defense witnesses that he did not commit the robbery and that it was the work of Cooper and Hall.    Therefore, any error was harmless,[17] and we overrule Simpson's third assignment of error.

---

[14] *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶99; *State v. Byrd*, 1st Dist. No. C-050490, 2007-Ohio-3787, ¶31.
[15] Evid.R. 401.
[16] Evid.R. 402.
[17] See *Robinson*, supra, at ¶16.

### V. Jury Instruction on Eyewitness Identification

{¶29}   In his fourth assignment of error, Simpson contends that the trial court erred in refusing to give his proposed jury instruction on eyewitness identification.   He argues that because the witnesses identified him through a nonobjective process, the jury should have been instructed that those procedures could have led to misidentification.  This assignment of error is not well taken.

{¶30}   Generally, the trial court must give requested special instructions when they are correct, pertinent and timely presented.[18]  The court need not give a requested jury instruction when it is included, in substance, in the general charge.[19]

{¶31}   Simpson's proposed instruction stated, "In this case there was testimony that the defendant was viewed by the [sic] Mr. Knott and Mr. Lunsford shortly after the event.  Single person lineups have long been disfavored in the law as inherently suggestive.  Suspects being viewed singly can lead to misidentification. You are to consider this fact along with all other factors in deciding whether identification of the defendant by Mr. Knott and Mr. Lunsford was in fact accurate."

{¶32}   Initially, we note that this proposed instruction was not a correct statement of Ohio law.  No prohibition exists against a victim viewing a suspect alone in a "one-man showup" when it occurs near the time of the alleged criminal offense. This court has stated, "Such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."[20]  The instructions

---

[18] *State v. Joy*, 74 Ohio St.3d 178, 181, 1995-Ohio-259, 657 N.E.2d 503; *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶26.
[19] *Wellman*, supra, at ¶26.
[20] *State v. Richards*, 1st Dist. No. C-050938, 2007-Ohio-172, ¶14, quoting *State v. Madison* (1980), 64 Ohio St.2d 322, 332, 415 N.E.2d 272.

the trial court gave to the jury accurately conveyed the law on eyewitness identification.[21]

{¶33}   Further, in this case, there was no lineup or showup of any kind. Knott and Lunsford happened to see Simpson driving through the neighborhood the morning after the robbery and alerted the police.  Under the circumstances, the trial court did not err in failing to give the proposed instruction, and we overrule Simpson's fourth assignment of error.

### VI. Cumulative Error

{¶34}   In his fifth assignment of error, Simpson argues that the court's multiple errors had a cumulative effect that denied him a fair trial.  The cumulative effect of errors may deprive a defendant of a fair trial, even though the individual instances of error do not warrant a reversal.[22]  The defendant must demonstrate that a reasonable probability exists that the outcome of the trial would have been different absent the alleged errors.[23]

{¶35}   Simpson has not demonstrated that, but for any errors by the trial court, the outcome of the trial would have been different.  He received a fair trial and the evidence was sufficient to support his conviction.[24]  Consequently we overrule his fifth assignment of error and affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT and FISCHER, JJ., concur.

Please Note:

The court has recorded its own entry this date.

---

[21] See *State v. Guster* (1981), 66 Ohio St.2d 266, 270-272, 421 N.E.2d 157; *State v. Witherspoon*, 8th Dist. No. 94475, 2011-Ohio-704, ¶21-26; *State v. Peoples* (Sept. 20, 1995), 1st Dist. No. C-940809.

[22] *State v. DeMarco* (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus; *Dieterle*, supra, at ¶38.

[23] *Dieterle*, supra, at ¶38.

[24] See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.