The STATE of Ohio, Appellee,

v.

WELLMAN, Appellant.

[Cite as State v. Wellman, 173 Ohio App.3d 494, 2007-Ohio-2953.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060484.

Decided June 15, 2007.

496

Julia L. McNeil, Cincinnati City Solicitor, Ernest McAdams, City Prosecuting Attorney, and Marva Benjamin, Assistant City Prosecuting Attorney, for appellee.

Timothy A. Smith, for appellant.

DINKELACKER, Judge.

{¶ 1} Defendant-appellant, Eric Wellman, appeals a conviction for obstructing official business under R.C. 2921.31. We find no merit in his five assignments of error, and we affirm his conviction.

{¶ 2} The state's evidence showed that agent Robert Boldin of the Ohio Department of Public Safety and Sergeant Brent McCurley of the Cincinnati Police Department went to The Exchange nightclub to investigate liquor-permit violations. They waited outside until an undercover police officer notified them that he had observed violations inside the club.

{¶ 3} When Boldin entered the club around 3:00 a.m., he saw 30 to 40 patrons in the "VIP" area. Many of these patrons were still drinking alcohol even though the club's liquor permit only allowed alcohol to be consumed until 2:30 a.m. Boldin stopped the first employee he could find and asked to speak to the person in charge. He planned to issue a citation to the highest-ranked person present who was associated with the club.

{¶ 4} The employee told Boldin to speak to Sung Oh, the manager of the club for the evening. As Boldin and McCurley attempted to speak to Mr. Oh, Wellman approached them and demanded to know why the officers were there. Believing him to be a club patron, they told Wellman to step away while they conducted their investigation. Other officers were clearing patrons from the club. Because it was late at night and the patrons had been drinking, Boldin and McCurley believed that gaining control of the situation was important for their own and the patrons' safety.

{¶ 5} Wellman became upset and started cursing at the officers. He eventually stepped away, and the officers again attempted to speak to Mr. Oh. Wellman soon returned and was even more belligerent. He placed himself between the officers and Mr. Oh, yelling and cursing. Still believing that Wellman was a patron, the officers again ordered him to step away so that they could complete their investigation.

{¶ 6} As the officers made a third attempt to speak with Mr. Oh, Wellman again interrupted, still yelling and cursing. This time he identified himself as "the owner" of the club. Wellman was a minority shareholder of the club, although he was not involved in its daily operation.

{¶ 7} The officers then turned their attention to Wellman and asked to see his identification and the club's liquor permit. He refused to produce either document. Boldin explained that if he was the owner of the liquor permit, Ohio law required him to provide identification and the liquor permit. Wellman again refused and started walking away.

{¶ 8} The officers ordered Wellman to stay, believing, based upon his claim of ownership, that he was the person to whom they should issue the citation. He again refused to comply, stating that he was leaving and that he was not going to give them anything. The officers ordered him to stop. He attempted to leave through a back door, but the officers stopped him and placed him under arrest. They eventually spoke to Paul Yankie, the owner and operator of the premises, and finished their investigation.

{¶ 9} In his first assignment of error, Wellman contends that the evidence was insufficient to support his conviction. He argues that the state failed to prove several elements of the offense. This assignment of error is not well taken.

 {¶ 10} R.C. 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." A violation of this statute requires an affirmative act. A person cannot be guilty of obstructing official business by doing nothing or failing to act.[1]

{¶ 11} Wellman argues that his conduct did not constitute obstructing official business because he simply made reasonable requests for an explanation from the officers. He also argues that refusal to provide a driver's license and other

---

1. *State v. King*, 3rd Dist. No. 9–06–18, 2007-Ohio-335, 2007 WL 209990, ¶ 58; *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942.

documentation is not an act that can be a basis for a conviction under R.C. 2921.31.[2]

{¶ 12} The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties.[3] In this case, Wellman's conduct went beyond asking the officers questions and refusing to give his identification. In fact, numerous patrons asked questions, and they were not arrested.

{¶ 13} Wellman's entire course of conduct prevented the officers from gaining control of the situation, identifying the highest-ranking person present, inspecting the liquor permit, and issuing the citation.[4] He actively prevented them from talking to the individual they believed was the manager of the club, not just by asking questions, but by being belligerent and argumentative. When he finally announced that he was the owner, even though he did not actively participate in the club's operation, he refused to provide his identification and the club's liquor license as state law required. Instead, he tried to leave, despite being ordered to stay. Under the circumstances, the evidence was sufficient to show that he committed acts that constituted the offense of obstructing official business.[5]

{¶ 14} Wellman next argues that his conduct was limited to truthful speech and that the state failed to prove that he intended his speech to obstruct official business. This court has held that truthful speech can satisfy the act element of the statute if it was done for the purpose of impeding an officer in the performance of his or her duty.[6]

{¶ 15} "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence."[7] The trier of fact must be able to infer from the

---

2. See *King*, supra, at ¶ 58; *In re Payne*, 1st Dist. No. C–040705, 2005-Ohio-4849, 2005 WL 2248870, ¶ 26.

3. *Payne*, supra, at ¶ 13; *State v. Jeter*, 1st Dist. No. C–040572, 2005-Ohio-1872, 2005 WL 927013, ¶ 14.

4. See *State v. Stayton* (1998), 126 Ohio App.3d 158, 163, 709 N.E.2d 1224.

5. See *State v. Stewart*, 8th Dist. No. 86411, 2006-Ohio-813, 2006 WL 440153, ¶ 20–22; *State v. Brickner–Latham*, 3rd Dist. No. 13–05–26, 2006-Ohio-609, 2006 WL 319183, ¶ 26–28; *Jeter*, supra, at ¶ 10–15; *Dayton v. Turic*, 2nd Dist. No. 20149, 2005-Ohio-131, 2005 WL 78498, ¶ 25–26.

6. *Payne*, supra, at ¶ 14; *Jeter*, supra, at ¶ 12.

7. *Payne*, supra, at ¶ 15, quoting *State v. Hardin* (1984), 16 Ohio App.3d 243, 245, 16 OBR 266, 475 N.E.2d 483.

defendant's conduct that the defendant intended to obstruct official business. "Where a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business unless the circumstantial evidence clearly demonstrates such intent." [8]

{¶ 16} In this case, Wellman's conduct involved more than truthful speech. It also went beyond arguing with a police officer.[9] Considering his conduct as a whole, the jury had an adequate basis for concluding that he had intended to obstruct Boldin and Curley in the performance of their duties.[10]

{¶ 17} Finally, Wellman argues that the state failed to prove that a "substantial stoppage" of the officers' progress had occurred. This court has held that the state must prove that the defendant's conduct in fact hampered or impeded the public official in the performance of the official's duties. We have stated that "there must be some substantial stoppage of the officer's progress before one can say he was hampered or impeded." [11]

{¶ 18} Wellman contends that the officers estimated that his conduct had delayed them approximately two to five minutes, which was not a "substantial stoppage." But this court has also stated that "[w]e do not hold that any finite period of time constitutes a 'substantial stoppage,' be the delay occasioned by the interference thirty seconds or two minutes." [12] If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction.[13]

{¶ 19} The evidence showed that Wellman's conduct was not merely "petty," as he claims. It prevented the officers from talking to the appropriate person for the issuance of the citation, from gathering physical evidence, and from gaining control of the situation for several minutes. The officers testified that gaining control of the situation was important for the safety of all involved. Danger to the people at the scene was relevant.[14] Consequently, the evidence did show that Wellman's conduct hampered or impeded the officers in the performance of their

8. *Payne,* supra, at ¶ 15.

9. See id. at ¶ 16; *Stayton,* supra, 126 Ohio App.3d at 164, 709 N.E.2d 1224.

10. See *State v. Altomare* (Nov. 30, 2000), 7th Dist. No. 99–CO–15, 2000 WL 1781581.

11. *State v. Stephens* (1978), 57 Ohio App.2d 229, 230, 11 O.O.3d 301, 387 N.E.2d 252.

12. *State v. Dunn* (Mar. 26, 1980), 1st Dist. No. C–790319.

13. *Stayton,* supra, 126 Ohio App.3d at 163–164, 709 N.E.2d 1224; *Dunn,* supra. Accord *Altomare,* supra.

14. See *Jeter,* supra, at ¶ 21–22.

duties. The state did not have to show that Wellman had prevented the officers from performing their duties, only that he had obstructed them from doing so.[15]

{¶ 20} In sum, our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of obstructing official business under R.C. 2921.31(A). Therefore, the evidence was sufficient to support the conviction.[16] We overrule Wellman's first assignment of error.

{¶ 21} In his second assignment of error, Wellman contends that the trial court erred in denying cross-examination on an essential element of the offense. He argues that the court should have allowed him to have Boldin reenact the events in "real time" to demonstrate that his conduct could not have created a "substantial stoppage." This assignment of error is not well taken.

{¶ 22} Defendants have a constitutional right to cross-examine witnesses. But the trial court has wide discretion to impose reasonable limits on cross-examination to prevent, among other things, confusion of the issues.[17] In this case, the reenactment could have been misleading to the jury. Further, Wellman questioned the officers extensively about the length of time their investigation was delayed due to his conduct. He also argued that issue to the jury. Under the circumstances, we cannot hold that the trial court's decision to limit cross-examination was so unreasonable, arbitrary, or unconscionable as to connote an abuse of discretion.[18] We, therefore, overrule Wellman's second assignment of error.

{¶ 23} In his third assignment of error, Wellman contends that the trial court erred by permitting the jury to consider events after his arrest on the issue of "substantial stoppage." He argues that the jury should not have considered the time taken to handcuff him, to walk him to a police car, and to process him after the arrest. This assignment of error is not well taken.

{¶ 24} We hold that any error in allowing the testimony about events after Wellman's arrest was harmless beyond a reasonable doubt, because it did not

---

15. Id. at ¶ 16; *Stayton,* supra, 126 Ohio App.3d at 163–164, 709 N.E.2d 1224.

16. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *Stewart,* supra, at ¶ 20–22.

17. *State v. Green* (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253; *State v. McIntosh* (2001), 145 Ohio App.3d 567, 578, 763 N.E.2d 704.

18. See *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331.

contribute to the conviction.[19] The evidence about events after his arrest was brief. Further, the officers' testimony about how his behavior had hindered or impeded them was clear, and the jury was not misled in any way.[20] Consequently, we overrule Wellman's third assignment of error.

{¶ 25} In his fourth assignment of error, Wellman contends that the trial court erred in failing to give his proposed jury instructions. He argues that the failure to give those instructions allowed the jury to find him guilty for a failure to act. This assignment of error is not well taken.

{¶ 26} Generally, the trial court must give requested special instructions when they are correct, pertinent, and timely presented.[21] The court need not give a requested jury instruction when it is included, in substance, in the general charge.[22]

{¶ 27} Wellman's first proposed instruction stated that "Ohio Rev. Code § 2921.31 [requires] an affirmative act in order to trigger culpability." The second instruction stated, "One cannot be guilty of obstructing official business by doing nothing. * * * The mere failure of a person to respond to an officer's request is not in violation of the ordinance. * * * Additionally, 'the mere refusal to produce identification upon request of a police officer will not support a finding of obstructing official business.'" These were correct statements of law.[23]

{¶ 28} Nevertheless, after reviewing the jury instructions as a whole,[24] we hold that they adequately informed the jurors that they had to find that Wellman had committed an affirmative act that hampered or impeded the officers in the performance of their duties.[25] The jury could not have reasonably concluded, after hearing the instructions, that they could find Wellman guilty for a failure to act. Under the circumstances, we cannot hold that the trial court abused its discretion in failing to give the requested instructions.[26] We overrule

19. See *State v. Robinson*, 1st Dist. No. C–060434, 2007-Ohio-2388, 2007 WL 1452590, ¶ 16.

20. See *State v. Lojas* (Apr. 21, 1998), 10th Dist. No. 97APC08–1082, 1998 WL 195671.

21. *State v. Joy* (1995), 74 Ohio St.3d 178, 181, 657 N.E.2d 503; *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, ¶ 12.

22. *State v. Davis*, 1st Dist. No. C–040665, 2006-Ohio-3171, 2006 WL 1716133, ¶ 16.

23. *King*, supra, at ¶ 58; *Hamm*, supra, 33 Ohio App.3d at 176, 514 N.E.2d 942.

24. *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus; *Robinson*, supra, at ¶ 18; *State v. Jacobs* (1995), 108 Ohio App.3d 328, 334, 670 N.E.2d 1014.

25. See *Findlay v. Hancock*, 3rd Dist. No. 5–04–45, 2005-Ohio-1918, 2005 WL 940859, ¶ 8.

26. See *Davis*, supra, at ¶ 16.

Wellman's fourth assignment of error.

{¶ 29} In his fifth assignment of error, Wellman contends that his conviction violated his right to freedom of speech under the First Amendment to the United States Constitution. He argues that he committed no affirmative act, other than speech, and that mere argument with the officers could not support the conviction. This assignment of error is not well taken.

{¶ 30} As we have previously stated, the conduct for which Wellman was convicted went beyond just speech. Other patrons asked questions of the officers that evening, and they were not arrested. Wellman's entire course of conduct was the basis of his conviction.

{¶ 31} Further, this court has stated that the First Amendment "has never conferred an absolute right to engage in express conduct whenever, wherever or in whatever manner a speaker may choose." [27] R.C. 2921.31 is content-neutral on its face.[28] A person has a right to verbally protest a police officer's actions or even to argue with or curse at an officer. But that person does not have the right to hamper or impede the officer in the performance of the officer's duties.[29] In this case, Wellman was not convicted based on the content of his speech, but on his volume and demeanor and his other actions that hindered the officers in conducting their investigation. His behavior "crossed the line between fair protest and actual obstruction." [30] Consequently, his conviction did not violate his First Amendment rights.[31] We overrule his fifth assignment of error and affirm his conviction.

Judgment affirmed.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.

---

**27.** *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, ¶ 23.

**28.** *Dayton v. Van Hoose* (Dec. 8, 2000), 2nd Dist. No. 18053, 2000 WL 1803867.

**29.** *Condon*, supra, at ¶ 24; *Stayton*, supra, 126 Ohio App.3d at 164, 709 N.E.2d 1224.

**30.** See id.

**31.** See *Parma v. Campbell*, 8th Dist. Nos. 79041 and 79042, 2001 WL 1352657; *Warren v. Lucas* (May 19, 2000), 11th Dist. 99–T–0019, 2000 WL 655446.