OPINION
{¶ 1} Defendant-appellant Cortisha Sims appeals from her conviction and sentence for Obstructing Official Business. Sims contends that the State failed to present evidence sufficient to support the conviction. *Page 2 
 {¶ 2} We conclude that the record contains evidence that, if believed, would convince the average mind of Sims's guilt beyond a reasonable doubt. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} On August 30, 2007, Sims was charged with Obstructing Official Business, in violation of R.C. 2921.31. The matter was tried to the court, at which time the following evidence was adduced:
 {¶ 4} Dayton Police Officer Michael Fuller testified that he was on patrol on August 28, 2007, when he initiated a traffic stop of a vehicle. According to Fuller, the vehicle came to a stop on Salem Avenue and Fuller pulled his cruiser, with lights on, behind the vehicle. As Fuller was running a computer check on the vehicle's license plates, he noticed Sims approach the front passenger door of the stopped vehicle. Fuller then stepped out of the cruiser and informed Sims that she "couldn't stand next to the vehicle [during the] traffic stop." Sims did not respond, and continued to speak to the driver of the stopped vehicle. The driver was leaning over into the passenger seat of his car.
 {¶ 5} According to Fuller, he told Sims to move away from the vehicle because it was "not safe for her to stand next to a traffic stop because I don't know involvement [and] because she's distracting my attention away from the subject of my traffic stop." Fuller again informed her to move away, and she again did not respond. Fuller then told Sims that she could either go stand next to the adjacent building or by the corner. Again she did not respond. Fuller testified that Sims began to walk toward the cruiser, and *Page 3 
that he again told her she "had to leave." According to Fuller, Sims stated that she did not have to leave. Fuller testified that Sims began to cuss at him and that she called him a "mother fucker."
 {¶ 6} Finally, after numerous warnings to Sims, Fuller walked around the cruiser to approach Sims, at which time she stated that he had "better not fucking touch her." Fuller then took Sims by her left arm and placed her into the cruiser. Sims continued to cuss at him, and she began to use her cell phone, which she threw out of the cruiser after Fuller asked her to give it to him . At that point Fuller called for backup. Once backup arrived, Fuller returned to the original traffic stop. Fuller testified that Sims prevented him from attending to the original traffic stop for twenty minutes.
 {¶ 7} Dayton Police Sergeant Clarence West testified that he arrived on the scene following Fuller's request for backup. West testified that Sims was very angry and loud and that she was using profanity. West also stated that when a traffic stop is initiated, the officers tell people that they must "move on * * * because we don't know what their intentions are. They have the element of surprise. We are to deal with the person or persons in the vehicle that we stopped. We don't need anyone else coming up getting involved, because that draws our attention to them rather than the task at hand, and for our safety and the safety of all those involved, we have them move on."
 {¶ 8} Following this testimony, Sims made a motion for judgment of acquittal, pursuant to Civ. R. 29, which the trial court denied. Thereafter, Sims testified that she was standing outside waiting for her ride home from work. She testified that as her ride approached her, she began to walk toward the car. She testified that once she saw the cruiser pull behind the vehicle, she stopped, and she never left the sidewalk. Sims *Page 4 
testified that she saw the cruiser lights and that she understood that a stop was occurring. Sims testified that she knew the driver had insurance and a valid operator's license, so she knew he would be "okay." She testified that she then began to walk toward the bus stop. Sims testified that she walked in the direction of the cruiser on the way to the bus stop. She testified that Fuller "just came out of nowhere and he grabbed [her]." Sims admitted that she "lost it" once she was placed in the cruiser, but testified that she had calmed down by the time West arrived on the scene.
 {¶ 9} The trial court found Sims guilty and sentenced her accordingly. From her conviction and sentence, Sims appeals.
 II {¶ 10} Sims's sole assignment of error states as follows:
 {¶ 11} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT FOUND HER GUILTY OF OBSTRUCTION OF OFFICIAL BUSINESS BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION AS A MATTER OF LAW."
 {¶ 12} Sims contends that the State failed to present evidence sufficient to support her conviction. She cites Hamilton v. Hamm (1986),33 Ohio App. 3d 175, for the proposition that a conviction for Obstructing Official Business requires a showing that the accused committed an affirmative act. Sims argues that the State failed to prove that she committed any "unprivileged affirmative act" that would constitute an obstruction of Officer Fuller's traffic stop.
 {¶ 13} A sufficiency of the evidence argument challenges whether the State has *Page 5 
presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} Sims was convicted of Obstructing Official Business in violation of R.C. 2921.31. That statute provides, in pertinent part, as follows:
 {¶ 15} "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 16} R.C. 2901.22(A) states that "a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 17} This court has noted that, as a general rule, "in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of *Page 6 
the official's duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request." State v. Harrell, Montgomery App. No. 21736, 2007-Ohio-4550. "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." State v. Wellman,173 Ohio App. 3d 494, 2007-Ohio-2953, ¶ 12.
 {¶ 18} In this case, there is no dispute that Officer Fuller was acting in an official capacity, that he was delayed in conducting the traffic stop by dealing with Sims, and that Sims had no privilege to interfere with his actions. The issue in this case is whether Sims committed an affirmative act with the purpose of preventing, delaying, or obstructing Fuller in the conduct of his duty.
 {¶ 19} The facts, viewed in a light favorable to the State, as the prevailing party, demonstrate that after Fuller initiated the stop, Sims approached the stopped vehicle. At that point, Sims was fully aware that a traffic stop was being conducted. Sims was repeatedly instructed to step away from the vehicle. Sims failed to respond to the request to move away, and instead began to cuss at Fuller. According to Fuller, Sims's "anger level started to escalate and she got continually louder." Eventually, Sims began to approach the cruiser, and continued to ignore Fuller's commands to leave the scene. Sims became so loud and abusive that Fuller felt compelled to call for backup to deal with her so that he could return to the initial traffic stop. The encounter between Fuller and Sims lasted twenty minutes.
 {¶ 20} Merely failing to move away from a scene, by itself, arguably might not constitute an affirmative act. However, given that Sims was fully cognizant of the fact that a traffic stop was underway, that she approached the vehicle despite that *Page 7 
knowledge, that the officer ordered her to move away, that she failed to do so and instead began to approach the officer while cussing at him, and that the entire episode took twenty minutes, we conclude Sims was acting in an affirmative manner. Furthermore, the duration of the episode, the profanity and screaming, and the act of walking toward the cruiser despite orders to leave the scene, lead us to conclude that the trial court did not err in determining that the State established that Sims acted with purpose to delay or hinder Officer Fuller.
 {¶ 21} Sims's sole assignment of error is overruled.
 III {¶ 22} Sims's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 GRADY and DONOVAN, JJ., concur. *Page 1