[Cite as *State v. Hunter*, 2014-Ohio-5801.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellee                    :          C.A. CASE NO.    2014 CA 25

v.                                              :          T.C. NO.    CRB1302317

ALICIA D. HUNTER                                :          (Criminal appeal from
                                                                    Municipal Court)
    Defendant-Appellant                   :


                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____30th____ day of _____December_____, 2014.

. . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, Assistant Fairborn Prosecutor, 510 W. Main Street, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

F. HARRISON GREEN, Atty. Reg. No. 0039234, Executive Park, Suite 230, 4015 Executive Park Drive, Cincinnati, Ohio 45241
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}     Defendant-appellant Alicia D. Hunter appeals her conviction and sentence for one count of resisting arrest, in violation of R.C. 2921.33, a misdemeanor of the second degree.   Hunter filed a timely notice of appeal with this Court on June 4, 2014.

{¶ 2}     The incident which forms the basis of the instant appeal occurred at approximately 9:00 p.m. on December 18, 2013, when Officer Carmen Bair was dispatched to the area of 204 S. Huron Court in Fairborn, Ohio, on a disturbance complaint involving a black male and a black female fighting in a parking lot.   The dispatch further stated that the male was wearing black pants and a red shirt.   Upon arriving in the general area, Officer Bair located the male, later identified as Ronald McFarlane, in the west parking lot of the K-Mart department store located at 224 E. Dayton Yellow Springs Road.   Officer Bair testified that he believed that McFarlane was intoxicated because of the odor of alcohol about his person.   McFarlane also had numerous scratches about his neck and face.   While he tried to speak with McFarlane, Officer Bair observed a black female, later identified as Hunter, approaching him.   Officer Bair attempted to detain McFarlane in order to investigate the nature of the disturbance.   McFarlane became extremely agitated and argumentative, whereupon Officer Bair decided to handcuff him.

{¶ 3}     Officer Joshua Bradford arrived at the scene just as Officer Bair was attempting to handcuff McFarlane.   Officer Bradford exited his cruiser and immediately went to assist Officer Bair, but Hunter, who was also intoxicated, began yelling and screaming at the officers regarding their attempt to restrain McFarlane.   Officer Bradford testified that he turned around and told Hunter that she needed to calm down and step back.

Hunter refused to move back and kept yelling at Officer Bradford who testified that her conduct was extremely disruptive and required him to divert his attention from the struggle between Officer Bair and McFarlane. Officer Bradford further testified that he was unsure if Hunter "was going to be a direct threat to [the officers] or not." Moreover, Hunter had not been patted down for weapons at that point in the investigation. Officer Bradford warned Hunter several times to stop yelling and step away from where the officers were struggling with McFarlane or he would be forced to arrest her for obstructing official business. Hunter refused to comply with Officer Bradford's instructions and began to directly approach the officers who were both trying to get the second handcuff on McFarlane's wrist. Before Hunter could get any closer to them, Officer Bradford stopped assisting Officer Bair with McFarlane, and he attempted to place Hunter under arrest.

{¶ 4} A third Fairborn police officer, Officer Sortman, arrived at the scene and had to assist Officer Bradford as he attempted to handcuff Hunter and place her in the back of his cruiser. Hunter attempted to pull away from the officers while they attempted to handcuff her. Even after she was handcuffed, Hunter continued to struggle against the officers. Hunter went "dead weight" when the officer tried to move towards the cruiser. Hunter also refused to duck her head down so that she could sit down in the cruiser. After McFarlane had been handcuffed and placed in his cruiser, Officer Bair assisted Officers Sortman and Bradford as they pulled the struggling Hunter into the rear of Bradford's cruiser. After Hunter had been placed in the cruiser, Officer Bradford informed her that she was under arrest for obstructing official business and resisting arrest.

{¶ 5} On December 19, 2013, a citation was filed against Hunter charging her with

obstructing official business and resisting arrest. The case was tried to the bench on June 3, 2014. At the close of evidence, Hunter made a Crim. R. 29 motion for acquittal, arguing that the State failed to adduce sufficient evidence to find her guilty of the charged offenses. The trial court granted Hunter's motion with respect to the charge of obstructing official business, but denied her motion as to the charge for resisting arrest. The trial court subsequently found Hunter guilty of resisting arrest and sentenced her to ninety days in jail, seventy of which were suspended. Hunter was additionally ordered to pay a $150.00 fine and to submit to a mental health evaluation and alcohol assessment.

{¶ 6} It is from this judgment that Hunter now appeals.

{¶ 7} Hunter's first assignment of error is as follows:

{¶ 8} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO DISMISS OBSTRUCTING OFFICIAL BUSINESS, R.C. 2921.31[,] WHEN THERE WAS NO PROBABLE CAUSE TO ARREST AS PRESENTED IN THE CITY OF FAIRBORN'S CASE."

{¶ 9} In her first assignment, Hunter contends that the trial court erred when it overruled her Crim. R. 29 motion for acquittal with respect to the charge for obstructing official business. However, the record clearly indicates that at the close of evidence, the trial court did, in fact, grant Hunter's renewed Crim. R. 29 motion and in fact, dismissed the count of obstructing official business. Accordingly, Hunter's first assignment is rendered moot.

{¶ 10} Hunter's second assignment of error is as follows:

{¶ 11} "DEFENDANT-APPELLANT'S CONVICTION OF RESISTING ARREST

WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY REASON OF THE CITY OF FAIRBORN FAILING TO SHOW A LAWFUL ARREST IN THE UNDERLYING CHARGE OF OBSTRUCTION OF OFFICIAL BUSINESS. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF RESISTING ARREST BASED UPON THE EVIDENCE PRODUCED AT TRIAL."

{¶ 12} In her second and final assignment, Hunter argues that the trial court erred when it found her guilty of resisting arrest because her conviction was against the manifest weight of the evidence. Although not set out in a separate assignment of error, Hunter also argues in the body of her argument that the evidence adduced at trial was insufficient to convict her of resisting arrest and the court erred when it overruled her Crim. R. 29 motion for acquittal regarding that charge. Specifically, Hunter contends that her arrest for resisting arrest was unlawful because the trial court ultimately found that the evidence was insufficient to convict her of obstructing official business, the underlying basis for the resisting charge. Accordingly, Hunter argues that the officers did not have a lawful basis upon which to arrest her, and her conviction for resisting arrest should therefore, be reversed.

{¶ 13} Crim. R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim. R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher*, 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt.' " (Citations omitted). *State v. Crowley*, 2d Dist. Clark No. 2007 CA 99, 2008-Ohio-4636, ¶ 12.

{¶ 14} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 09CA0064, 2011-Ohio-23, ¶ 46. When a conviction is challenged on appeal as being against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Resisting arrest is defined at R.C. 2921.33(A), which states that "[n]o person, recklessly or by force, shall resist or interfere with a *lawful* arrest of himself or another." "Although the arrest must be 'lawful,' it is not necessary for the state to prove that the defendant was in fact guilty of the offense for which the arrest was made to uphold a conviction for resisting arrest. *State v. Hurst*, 1st Dist. Hamilton No. C-880706, 1989 WL 140010 (Nov. 22, 1989). An arrest is 'lawful' if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed. *Id.; Parma Heights v. Kaplan*, 8th Dist. Cuyahoga No. 55108, 1989 WL 30584 (Mar. 30, 1989)." *State v. Burns*, 2d Dist. Montgomery No. 24784, 2012-Ohio-1847, citing *State v. Sansalone*, 71 Ohio App.3d 284, 285-286, 593 N.E.2d 390 (1st Dist.1991).

{¶ 16} The complaint of obstructing official business, in violation of R.C. 2921.31, states as follows:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 17} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 18} "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Herron*, 2d Dist. Montgomery No. 23868, 2011-Ohio-127, ¶ 20, citing *State v. Wellman,* 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215 (1st Dist.), at ¶ 12.

{¶ 19} On direct examination by the State, Officer Bradford provided the following testimony:

The State: What did you observe – what did you do when you observed Officer Bair struggling with Mr. McFarland [sic]?

Officer Bradford: At that time I approached [Officer Bair] and I helped him detain the male subject or at least I attempted to before I was – I

had to divert my attention.

Q: Okay. What drew your attention elsewhere?

A: [Hunter] was very upset that we were attempting to detain, from what I believed at that time, was detain [McFarlane]; she was very irate, she was going off, she was very upset, again, she was screaming, trying to figure out what was going on. At that time, I approached her and I warned her that she needed to calm down and step back.

\*\*\*

Q: Okay. At that point you – just to get you back on to time, you indicated to Ms. Hunter that she needed to back off?

A: Yes, ma'am.

Q: Okay. And what happened once you asked her to back off?

A: She continued to stay in the same place, however[,] she continued to speak so loudly that we couldn't really figure out why we were – you know, at that time I didn't know if she was going to be a direct threat to us or not. At that time I was trying to assess the situation, she was screaming loud, she was very upset; I don't remember exactly what she was saying, however, I mean, it – it was definitely taking my attention off what needed to be taken – focusing on – on [McFarlane], what was going on with him and I was diverting my attention to her while Officer Bair was trying to detain him.

\*\*\*

Q: What was your roll [sic] in attempting to assist Officer Bair?

A: I was trying to assist him in getting the second cuff on [McFarlane].

Q: Did you warn Ms. Hunter just once?

A: I warned her multiple times and I believe it was at least three times; I think it was three times I warned her to step back and to calm down. At one point I even told her to stand, there was an island there, I asked her to stand behind the island.

***

Q: And this island is in the parking lot of the K-Mart?

A: Yes, ma'am.

***

Q: Okay. Did she go stand by the island or behind the island?

A: No, ma'am, she actively started to approach us. At that time I had to break away from Officer Bair due to the fact that I couldn't – we couldn't both – I had to take my focus off of what was going on with him and direct it towards her just because of the thought – you know, for officer safety reasons and what she – she could do.

Q: Okay.

A: At that time, she hadn't been [patted-down], she hadn't had – (inaudible) – or anything like that, I mean, we didn't know – again, we were – at this time we were just starting the initial investigation.

***

Q: Okay.   You indicated that you warned her a few times?

A: Yes, ma'am.

Q: Okay.   Did your warning contain any other information other than please step back?

A: I warned her that if she didn't step back she was going to be placed under arrest.

Q: Okay.

A: That was during the initial warnings.

Q: Did you tell her for what?

A: For obstructing.

Q: Okay.   Did she heed your warnings?

A: No, ma'am.

Q: What happened?

A: After she didn't heed my warnings at that time, that's when I walked up and started to detain her – our investigation, for safety purposes until we could detain both subjects.

Q: Did you place cuffs on her?

A: I attempted to, yes.

Q: Okay.   You placed her under arrest at that point?

A: Well, I started to put one cuff on her and at that time, she actively started to pull away from me, she was not happy, again, what was going on with [McFarlane], at the same time she wasn't happy with what was going on

when I was trying to detain her myself; she began to pull away from me, at that time Officer Sortman had to assist me in getting – again – just like [McFarlane] – Officer Sortman had to step aside and had to help me detain [Hunter].

Q: And at that point was she under arrest for obstructing?

A: Yes, ma'am.

Q: Did you ever tell her she was under arrest for obstructing?

A: Once we got her back to the vehicle; at that time I was solely focused on trying to get her contained, even while she was in cuffs she wasn't really contained[,] she was still actively – you know, she wouldn't walk, we would try to move her to an area where we could put her and separate the two until we could figure out what was going on, she wouldn't – she was dead weight at that point; she tried to walk backwards, I do remember that at one point and then that's when we – I opened the door and we asked her several times to sit in the rear of the cruiser like we instruct the people that we arrest we – I told her to turn around and sit down and she wouldn't do that.

Q: Okay.  At that point you had informed her that she was under arrest?

A: Yes, ma'am.

{¶ 20}  We conclude that a reasonable jury, or the trial court in the instant case, could find from Officer Bradford's testimony that Hunter's persistent screaming and yelling at him from a short distance, while he was attempting to focus on assisting Officer Bair,

impaired or hindered Officer Bradford in the performance of his duties. Yelling and screaming at someone, from a short distance away, ordinarily constitutes a demand that the person addressed give their attention. *Herron*, ¶ 62. The trial court in this case could reasonably have inferred that Hunter intended to demand Officer Bradford's attention by persistently yelling and screaming at him and refusing to calm down and step away. *Id*.

{¶ 21} Although Officer Bradford's testimony is not perfectly clear on this point, a reasonable jury could find that he told Hunter ("at least three times") that she needed to calm down and step away so that he could effectively assist Officer Bair. Officer Bradford also testified that he specifically informed Hunter that he would arrest her for obstructing official business if she did not cease her disruptive conduct. But, despite these warnings and requests, Hunter continued to yell at Officer Bradford, and at one point, she even walked directly toward him and Officer Bair as they tried to handcuff McFarlane. On these facts, a jury could reasonably conclude that Hunter had the intention of distracting Officer Bradford from his task, thereby hindering and impeding him in the performance of his duties.

{¶ 22} The trial court found that the evidence was insufficient to support Hunter's conviction for obstructing official business and granted her Crim. R. 29 motion for acquittal with respect to that count. Hunter, therefore, argues that she could not be convicted of the offense of resisting arrest, proscribed by R.C. 2921.33(A), because her arrest was not lawful, which is an element of the offense. In making this argument, she contends that her arrest for obstructing official business was unlawful because the evidence presented by the State was not sufficient to support a conviction on that charge.

{¶ 23} We recently discussed this issue in *Herron*, where we stated the following:

In order to find that the evidence in the record is sufficient to support a conviction for Obstructing Official Business, a court must find that a reasonable jury could find from that evidence, beyond reasonable doubt, that the defendant hampered or impeded a police officer in the performance of her official duties, with the purpose to do so. In order to find that an arrest for Obstructing Official Business was lawful, a court need only find that the police officer effecting the arrest, based upon the facts known to the officer, or known to the police in general and transmitted to the arresting officer, had probable cause to believe that the person arrested committed the offense.

There are, then, two classes of cases where there might not be sufficient evidence to convict a defendant of Obstructing Official Business, and yet an arrest for that offense would have been lawful, and could be used to support a charge of Resisting Arrest. One of these classes is where the facts known to the officer at the time of the arrest and the facts in evidence at the trial for Obstructing Official Business are materially different. Perhaps the evidence adduced at trial would establish reasonable doubt, at least, that the actor was acting with the requisite intent (the actor had la Tourette's Syndrome, for example), but the officer effecting the arrest was unaware of those facts.

*The second class of cases is where there is some evidence that the defendant acted with the requisite intent, but it falls short of proof beyond reasonable doubt, and yet, that same evidence, known to the arresting police*

*officer, was sufficient to support a finding of probable cause.*

*Id.* at ¶¶ 67-69.

**{¶ 24}** Upon review, we find that the instant case falls under "[t]he second class of cases" referred to in *Herron*. *Id.* While the evidence adduced by the State may not have convinced the trial court beyond a reasonable doubt that Hunter was guilty of obstructing official business, that same evidence, known to Officer Bradford, was sufficient to support a finding of probable cause to initiate a lawful arrest for that charge. Moreover, the record clearly establishes that Hunter resisted arrest. Thus, we conclude that although the trial court determined that the elements of the underlying charge for obstructing official business had not been proven, the record establishes that Bradford possessed a reasonable basis upon which to arrest Hunter for obstructing official business. At a minimum, Hunter's conduct establishes a valid arrest for disorderly conduct, a misdemeanor of the fourth degree. Accordingly, we find that the State adduced sufficient evidence at trial to convict Hunter of resisting arrest, and her conviction was not against the manifest weight of the evidence.

**{¶ 25}** Hunter's sole assignment of error is overruled.

**{¶ 26}** Hunter's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Betsy A. Deeds
F. Harrison Green
Hon. Beth W. Root