[Cite as *State v. Elkins*, 2018-Ohio-1267.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J. |
| -vs- | |
| | Case No. 17 CA 59 |
| DREW ELKINS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Mansfield
Municipal Court, Case No. 17 CRB 163


JUDGMENT:                  Affirmed


DATE OF JUDGMENT ENTRY:     March 30, 2018


APPEARANCES:

For Plaintiff-Appellee           For Defendant-Appellant

MICHAEL J. KEMERER         RANDALL E. FRY
ASSISTANT LAW DIRECTOR     10 West Newlon Place
30 North Diamond Street       Mansfield, Ohio 44902
Mansfield, Ohio 44902

*Wise, P. J.*

**{¶1}** Appellant Drew Elkins appeals following his conviction, in the Mansfield Municipal Court, Richland County, for obstructing official business and criminal trespass. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}** On January 10, 2017, appellant and Victoria Chapman were at the Richland County Children Service's ("RCCS") offices in Mansfield for a scheduled visit with their infant child.[1] The agency's family support specialist assisting with the visit, Erica Denham, specifically advised them prior to the commencement of the visit that no cell phones were allowed, and that if during the visit a cell phone or similar device were discovered, the event would terminate.

**{¶3}** At some point, appellant and Chapman discovered a red mark on their child, which caused concern to them. However, a cell phone rang during the visitation time, at which point Denham and some of her co-workers immediately "let them know that their visit was ending and that they needed to exit the building." Tr. at 59. Appellant refused to leave, and he asked to speak to a supervisor.[2] RCCS employees thereupon decided to request law enforcement assistance. Furthermore, an ambulance was requested for Chapman, even though two of the State's witnesses later testified that they observed no medical conditions requiring such assistance. *See* Tr. at 68-69 (Denham), 77 (Gordon).

---

[1]　The State continues to question whether legal paternity has been established by appellant. Appellee's Brief at 2. This Court can only presently respond that this information would be *dehors* the record and has little bearing on our analysis herein.

[2]　There is also some indication in the transcript that a supervisor had already been requested by RCCS employees after Victoria Chapman had noted the purported mark on the baby, before the cell phone incident. *See* Tr. at 71.

{¶4} Sgt. William Gordon of the Richland County Sheriff's Department soon arrived at RCCS. He gave some instructions to appellant, which he believed appellant intentionally did not follow. Rather than immediately issuing a summons to appellant for criminal trespass, Sgt. Gordon decided to allow appellant to follow the ambulance for Chapman to the hospital.

{¶5} Sgt. Gordon thereafter came into the hospital waiting room and began writing a summons for criminal trespass. Deputy Amber Alfrey also arrived on the scene. As further analyzed *infra*, while Sgt. Gordon was attempting to write the summons, appellant engaged in actions to attempt to delay the officer in his duties. Sgt. Gordon therefore additionally charged the appellant with obstructing official business.

{¶6} The matter proceeded to a jury trial on May 22, 2017. Appellant was found guilty of one count of obstructing official business, R.C. 2921.31(A), a misdemeanor of the second degree, and one count of criminal trespass, R.C. 2911.21(A)(4), a misdemeanor of the fourth degree.

{¶7} On June 1, 2017, appellant was sentenced as follows: a fine of $200.00 and ninety days in jail for obstructing official business, and a $100.00 fine with thirty days in jail on the offense of criminal trespassing. The jail sentences were ordered to be consecutive to each other and were set to begin on July 11, 2017. Appellant was also ordered to obtain a mental health assessment.

{¶8} The trial court subsequently suspended all jail time and imposed one year of probation.

{¶9} Appellant filed a notice of appeal on June 30, 2017. He herein raises the following two Assignments of Error:

**{¶10}** "I. THE EVIDENCE IN THIS CASE WAS INSUFFICIANT [SIC] AS A MATTER OF LAW TO SUPPORT A CONVICTION OF OBSTRUCTION OF OFFICAL [SIC] BUSINESS AND AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED.

**{¶11}** "II. THE EVIDENCE IN THIS CASE WAS INSUFFICIANT [SIC] AS A MATTER OF LAW TO SUPPORT A CONVICTION OF CRIMINAL TRESPASS AND AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

### *Appellate Standard of Review*

**{¶12}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010-Ohio-15, 2010 WL 27862, ¶ 11.

I.

**{¶13}** In his First Assignment of Error, appellant contends there was insufficient evidence presented to convict him of the offense of obstructing official business. We disagree.

**{¶14}** R.C. 2921.31(A) states in pertinent part as follows: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

**{¶15}** Ohio courts have generally required an affirmative act for the offense of obstructing official business. *State v. Grice*, 180 Ohio App.3d 700, 2009–Ohio–372, 906 N.E.2d 1203 (1st Dist.). An affirmative act is defined as any conduct, physical or verbal, that hampers or impedes a police officer in the performance of his or her duties. *State v. Wellman*, 173 Ohio App.3d 494, 2007–Ohio–2953, 879 N.E.2d 215 (1st Dist.). We have recognized generally that police officers engaging in the detention and arrest of individuals are engaged in a governmental function. *See Herbert v. City of Canton*, 5th Dist. Stark No. 2001CA00281, 2002–Ohio–906. *See, also, Pisoni v. McCord*, 5th Dist. Stark No. 2017CA00111, 2018-Ohio-64, ¶ 38.

**{¶16}** The record in the case *sub judice* reveals Sgt. Gordon explicitly recounted that as he was trying to issue the summons in the hospital waiting room, appellant repeatedly asked questions, spoke on his cell phone, interrupted him multiple times when he attempted to speak with the involved parties, and generally disrupted his attempt to prepare citations for the offenses. *See* Tr. at 78-82. In the officer's words:

> Um, during the whole process it was my interpretation of an intentional delay, um, if, you know, if I would ask him, hey, sit down, sit down, or would have to ask him multiple times sit down. If during the process he would keep asking me multiple questions and I would have to

constantly tell him, you know, sit down, quit interrupting me, you know, not that you want to go in there as, as the bully that's in control of everything, but you have to have control over the scene and, you know, you have to get in, handle what needs to be done and go to another call, we had multiple calls pending, I can't spend all day, you know, when someone's intentionally or what my perception was, was intentionally trying to delay you. * * * [E]ven at the hospital he had to be told multiple times, sit down, wait until I issue the summons and, you know, it, it caused me a much greater amount of time in issuing the summons then [sic] it would had normally taken had I not had multiple interruptions.

**{¶17}** Tr. at 79-80.

**{¶18}** Sgt. Gordon ultimately estimated that appellant's actions caused him to spend "twice as long if not longer" responding to and addressing the incident while at the hospital. Tr. at 80-81.

**{¶19}** In addition, Deputy Amber Alfrey also testified that appellant was argumentative and uncooperative when Sgt. Gordon was attempting to issue the citations, and she likewise noted that appellant during this time began talking on his cell phone. Tr. at 91, 93. She further testified that based on her observations and her own prior experience in issuing citations, appellant "absolutely" delayed Sgt. Gordon. Tr. at 92.

**{¶20}** Furthermore, in regard to the issue of "privilege" under R.C. 2921.31(A), this Court has taken the position that the absence of privilege is not an essential element of obstructing official business which the State must prove beyond a reasonable doubt. *See*

*State v. Stevens*, 5th Dist. Morgan No. 07–CA–0004, 2008–Ohio–6027, ¶ 35. Other Ohio appellate courts have reached the same conclusion. *See State v. Luke*, 4th Dist. Washington No. 09CA30, 2010–Ohio–4309, ¶ 16; *State v. Williams*, 8th Dist. Cuyahoga No. 83574, 2004–Ohio–4476, ¶ 38; *State v. Novak*, 4th Dist. Gallia No. 16CA4, 2017-Ohio-455, ¶ 18. Appellant in this vein maintains that a police officer should be "expected to tolerate a certain level of uncooperativeness." Appellant's Brief at 13. Certainly, a person has the right to reasonably protest a police officer's actions, or perhaps even argue with or curse at an officer, but that person does not have the right to hamper or impede the officer in the performance of his or her duties. *See State v. Wellman*, 173 Ohio App.3d 494, 2007–Ohio–2953, 879 N.E.2d 215 (1st Dist.).

**{¶21}** Accordingly, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable jurors could have found appellant guilty beyond a reasonable doubt of the misdemeanor offense of obstructing official business.

**{¶22}** Appellant's First Assignment of Error is overruled.

II.

**{¶23}** In his Second Assignment of Error, appellant argues there was insufficient evidence presented to convict him of the offense of criminal trespass. We disagree.

**{¶24}** In essence, remaining upon the premises of another without legal authority after being notified to leave constitutes the offense of criminal trespass. *See State v. Haley*, 5th Dist. Coshocton No. 2014CA0002, 2014-Ohio-2515, ¶ 16, citing *State v. Carriker,* 5 Ohio App.2d 255, 214 N.E.2d 809 (1964).

**{¶25}** R.C. 2911.21(A)(4) states as follows: "No person, without privilege to do so, shall *** [b]eing on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either."

**{¶26}** Furthermore, R.C. 2911.21(B) specifically states: "It is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency."

**{¶27}** In the case *sub judice*, there is little in the record to counter the State's basic evidence that appellant did not leave the RCCS premises when clearly advised to do so by agency personnel. Appellant therefore instead urges that the State failed to show that he "negligently failed or refused to leave" per the statute, maintaining the evidence shows he was concerned about the red mark on the child and had made requests to speak to a supervisor. However, we are not persuaded by appellant's insufficiency claim in this regard.

**{¶28}** Finally, appellant again raises the issue of "privilege." The definition of said term is set forth in 2901.01(A)(12) as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." Interestingly, in contrast to case law regarding the privilege question as to the offense of obstructing justice (*see Stevens* and *Novak*, *supra*), "Ohio courts construe the lack-of-privilege requirement as an element of the offense of criminal trespass, and not an affirmative defense." *Logsdon v. Hains*, 492 F.3d 334, 341–42 (6th Cir. 2007), citing *State v. Newell,* 93 Ohio App.3d 609, 639 N.E.2d 513, 514 (1994).

**{¶29}** However, in our minds, the stress and demands of children services provision require that a visitation facility be maintained as a secure and professional setting in order to properly meet the wide array of needs of the families involved. As Denham noted in response to a question on cross-examination, "*** our role is more protection of the baby, so once we are making sure that child is safe, we try not to get involved with all of the other things happening." Tr. at 67-68. Ohio law recognizes that if a defendant's presence at the subject property is initially lawful, a trespass may nonetheless occur if the defendant's privilege is revoked or terminated. *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017 WL 2610658, ¶ 49, citing *State v. Petefish*, 7th Dist. Mahoning No. 10 MA 78, 2011–Ohio–6367, ¶ 22. Furthermore: "If the status of land as public property is not always a defense to a charge of trespass, which is always an entry without privilege, then, concomitantly, the public official or agency into whose charge the property is put can withdraw or revoke the privilege otherwise enjoyed by a member of the public to enter. Whether that action has occurred, and whether it is reasonable, is a question of fact." *State v. Donahue*, 5th Dist. Fairfield No. 2004-CA-20, 2005-Ohio-1478, ¶ 61 (additional citation omitted).

**{¶30}** In this instance, Denham testified that she had warned appellant and Chapman, apparently based on experiences with the couple during previous sessions, that cell phone possession during their visit would not be permitted (Tr. at 58) and that she clearly directed them to leave the premises after that rule was violated (Tr. at 59-60). Appellant also admitted in his defense testimony that Sgt. Gordon had warned him previously not to bring a cell phone to visitation sessions. Tr. at 113-114. In addition, Deputy Alfrey recalled observing Sgt. Gordon trying to explain to appellant at RCCS that

"when they tell you that you have to leave the premises numerous times, you have to leave, um, and Mr. Elkins was not cooperating and refusing to leave and very argumentative." Tr. at 90.

**{¶31}** Accordingly, we reject appellant's suggestion that his privilege to be at the RCCS facility for purposes of a child visitation appointment extended indefinitely, and upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable jurors could have found appellant guilty beyond a reasonable doubt of the misdemeanor offense of criminal trespass as charged.

**{¶32}** Appellant's Second Assignment of Error is overruled.

**{¶33}** For the reasons stated in the foregoing opinion, the judgment of the Mansfield Municipal Court of Richland County, Ohio, is hereby affirmed.

By: Wise, P. J.

Gwin, J., and

Hoffman, J., concur.

JWW/d 0221