[Cite as *State v. Woods*, 2016-Ohio-661.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                      :

                                           No. 15AP-24
v.                                                     :      (C.P.C. No. 14CR-4774)

Kory A. Woods,                                         :      (REGULAR CALENDAR)

      Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on February 23, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Kory A. Woods, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. Because we find that the failure to define "purpose" for the jury under the circumstances of this case constitutes plain error, we reverse the judgment of the trial court and remand for proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On the evening of August 30, 2014, Columbus Police Officers Andrew Drake and Andrew Rogerson were on bike patrol in The Ohio State University campus area. They were riding their bicycles on Pearl Alley behind the Newport Music Hall just off of North High Street. As they rode, a few men began talking to Officer Rogerson about how

many miles he rides each night.  Officer Rogerson slowed down to talk to the men, while Officer Drake continued to ride ahead.  Accounts vary about what happened next, but there is no dispute that it involved a tussle between Officer Rogerson and Woods and culminated in Woods' arrest, indictment, trial, and conviction for obstruction of official business.

{¶ 3}  Rogerson (who is the complaining officer in this case) testified at trial that Woods approached him, grabbed on to his gun, and pulled "violently" after saying, "Hey, security officer * * * [l]et me get that gun."  (Tr. Vol. I, 137.)  Officer Drake also testified. He testified that he heard someone say "[g]imme your gun" and when he turned around he saw Woods bent over, his hair in Officer Rogerson's grasp, and his hand on Officer Rogerson's waist.  (Tr. Vol. I, 85.)  However, the civilian witnesses testified differently. The first witness called by the prosecution in this case, an employee with the music hall, testified that he saw Woods gesture toward the officer's waist as Woods intoned, "Hey, rent a cop." (Tr. Vol. I, 25.)  Whereupon, according to that witness, "[t]he officer immediately turned to his right and he jumped off of his bike and tackled [Woods]."  (Tr. Vol. I, 26.)  The second prosecution witness, who also worked at the music hall, testified that the two bike patrol officers were stopped and talking to a couple of college students about how many miles the officers cover in a night.  Then, according to this witness, another person (Woods) "came up behind the officer's right shoulder, and I don't know what his intentions were.  I don't know if it was just to pat up the officer on the back or to just give him a hug kind of like this, but he reached his arm out like this, went like this, and his hand ended up on the officer's hip."  (Tr. Vol. I, 59-60.)  All three of the other witnesses who were called by the defendant (two students from The Ohio State University and a local business manager) testified that Woods was not aggressive toward the officer and never touched the officer's gun, but he may have tried to put an arm around the officer's shoulder.

{¶ 4}  On September 8, 2014, following the altercation on August 30, 2014 between Officer Rogerson and Woods, a Franklin County Grand Jury indicted Woods for a count of aggravated robbery, in violation of R.C. 2911.01, and a count of obstructing official business, in violation of R.C. 2921.31.  Woods entered a not guilty plea to the charges and proceeded to a jury trial.  The jury found Woods not guilty of aggravated

robbery, but guilty of obstructing official business. The trial court sentenced him accordingly.

## II.  ASSIGNMENTS OF ERROR

{¶ 5}   Woods now appeals and assigns the following errors:

I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF OBSTRUCTING OFFICIAL BUSINESS AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE REQUISITE MENTAL STATE FOR OBSTRUCTING OFFICIAL BUSINESS.

III. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DEPRIVING HIM [OF] HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

We address the assignments of error out of order for analytical clarity.

## III.  DISCUSSION

### A. Second Assignment of Error – Plain Error in Failure to Define "Purpose"

{¶ 6}   After the close of evidence, the trial court instructed the jury in this case as follows:

Before you can find the defendant guilty of obstructing official business, you must find beyond a reasonable doubt that on or about the 30th day of August, 2014, in Franklin County, Ohio, the defendant, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of an authorized act within the public official's official capacity, did an act that hampered or impeded that public official in the performance of the public official's lawful duties. Furthermore, the offense created a risk of physical harm to any person.

(Tr. Vol. II, 277.)  However, the trial court did not define "purpose."  " 'As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error.' "  (Footnote omitted.)  *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980).

{¶ 7}  Here, defense counsel did not object or specifically request a purpose instruction. Thus, we review the issue for plain error.  The Supreme Court of Ohio recently described the "plain error" inquiry:

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden of proof to demonstrate plain error on the record, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings[.]"However, even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims.

(Citations omitted.)  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22; *see also State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶ 13; *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  We additionally note that "in *Adams*, [the Supreme Court] held that the failure to instruct on each element of an offense is not necessarily reversible as plain error. *Id.* at paragraph two of the syllabus.  Rather, an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions. *Id.* at paragraph three of the syllabus." *Wamsley* at ¶ 17.

{¶ 8}  The State concedes that "the trial court should have instructed on the statutory definition of 'purposely' " but maintains that the trial court's error in this regard was not plain error.  (State's Brief, 12.)  We disagree.  The model jury instructions, as

contained in Ohio Jury Instructions include a detailed definition of "purpose" in the context of this offense:

> A person acts purposely when it is his/her specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to [prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity].

*Ohio Jury Instructions*, CR Section 417.01 (Rev. Jan. 10, 2015); R.C. 2921.31(A); *see also Ohio Jury Instructions*, CR Section 521.31; *Ohio Jury Instructions*, CR Section 417.01, which provide respectively recommended jury instructions for obstruction of official business for the definition of "purpose" as used within that instruction, as well as the statutory definition of "purposely" found in R.C. 2901.22(A) ("A person acts purposely when it is the person's specific intention to cause a certain result.").

{¶ 9} The trial court defined the obstruction offense, itself, and many of the terms included in the offense, including "public official," "lawful duties," and "physical harm to persons." Yet, despite the existence of model instructions and a statutory definition, it did not define "purpose," the mens rea of the offense, that is, the essential element that transforms otherwise potentially innocent conduct into a criminal attempt to thwart the course of justice. *Columbus v. Hairston*, 10th Dist. No. 75AP-387 (Mar. 4, 1976) (finding no obstruction where a defendant walked in front of a patrol car, traded oral barbs with the officer about who had the right of way, and was arrested for jaywalking and obstruction); *see also State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, ¶ 12, 30 (1st Dist.) (patrons who merely asked questions of officers attempting to issue a citation in a bar were not arrested, but Wellman, who repeatedly attempted to interrupt officers and ultimately misled them about who managed the bar was guilty of obstruction). This omission of the definition of "purpose" was error, and this error is obvious.

{¶ 10} Remaining for consideration is whether the trial court's error in not instructing the jury on the definition of "purpose," as used for the crime of obstructing, resulted in prejudice to Woods. *Rogers* at ¶ 22. We hold that it did. In *State v. Stevens*, 5th Dist. No. 07-CA-0004, 2008-Ohio-6027, ¶ 49-50, for instance, the Fifth District Court of Appeals found error but not plain error in a trial court's failure to instruct on purpose, because there was no indication of how the failure to instruct might have "misled the jury

to appellant's prejudice."  Here, by contrast, there existed considerable ambiguity within the evidence about Woods' purpose in approaching Officer Rogerson.

{¶ 11} Officer Rogerson testified that Woods grabbed on to the officer's gun and pulled "violently" after saying, "[l]et me get that gun." (Tr. Vol. I, 137.)  Officer Drake testified that he heard someone say "[g]imme your gun," and when he turned around he saw Woods bent over, his hair in Officer Rogerson's grasp, and his hand on Officer Rogerson's waist.  (Tr. Vol. I, 85.)  However, as described in the factual background from the record, the other witnesses' testimony differed from those of the two officers.  None of the five other witnesses in the case (two called by the prosecution) testified that Woods was attempting to grab or take the officer's gun.  There is plainly a question of whether, based on this inconsistent testimony evidence, Woods had formed a "specific intention to [prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity]" when he approached the officer. *Ohio Jury Instructions*, CR Section 417.01; R.C. 2921.31(A).

{¶ 12} Additionally, Officer Rogerson testified that he believed Woods was high at the time of the incident, and each of Woods' witnesses testified that Woods had been drinking with them for a time prior to the incident (though testimony varied about the quantities consumed).  The Supreme Court has remarked that "[t]he common law and statutory rule in American jurisprudence is that voluntary intoxication is not a defense to any crime.  An exception to the general rule has developed, where specific intent is a necessary element, that if the intoxication was such as to preclude the formation of such intent, the fact of intoxication may be shown to negative this element."  (Citations omitted.)  *State v. Fox*, 68 Ohio St.2d 53, 54-55 (1981).  Effective in 2000, the Ohio Legislature adopted a law providing that "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."  R.C. 2901.21(D); 1999 Am.Sub.H.B. No. 318.  However, even after the passage of that legislation, the Supreme Court has cited *Fox* and has continued to suggest that there may be some utility to considering intoxication.  *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 74, fn. 1.  Thus, we also note that there may have been some question as to Woods' specific intent in light of whatever the jury may have found to be his state of inebriation. *Ohio Jury Instructions*, CR Section 417.01; R.C. 2921.31(A).

{¶ 13} Without the detailed definition of purpose set forth by statute and in the Ohio Jury Instructions to assist the jury in determining the facts as to this vital inquiry, the jury did not have what it needed to determine whether Woods acted purposely when it found him guilty of the offense of obstruction of justice. For the jury to have found from the evidence this essential element existed for the crime of obstruction, it needed to know that in order for Woods to be found guilty, he needed to have in his mind more than a vague whim, but actually a "specific intention to [prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity.]" *Ohio Jury Instructions*, CR Section 417.01; R.C. 2921.31(A); *see also Hairston*. When the trial court omitted from its instructions to the jury any legally sufficient definition of purpose, this obvious error prejudiced Woods. Because there was conflicting testimony and no instruction on what constituted the specific intention of "purpose," along with a "not guilty" verdict in the trial on the indictment count of aggravated robbery,[1] we find that the outcome was affected by the error. It is reasonably probable that the jurors did not infer from the evidence the legally required specific intention because they were not instructed that they had to find it. Being cognizant that "[i]nconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict of guilt," we still cannot completely ignore the fact that, since the jury found Woods "not guilty" of aggravated robbery, its members similarly may not have believed Woods had knowingly attempted to deprive Officer Rogerson of his gun as to the obstruction count of the indictment. *State v. Hicks*, 43 Ohio St.3d 72, 78 (1989), citing *United States v. Powell*, 469 U.S. 57, 68 (1984). Because we find a reasonable probability that Woods was convicted of obstructing without a jury finding that he held the requisite

---

[1] R.C. 2911.01(B) provides:

> No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
>
> (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
>
> (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.

specific intent or acted with purpose to obstruct, we find this acted to prejudice Woods at trial and that it was a manifest miscarriage of justice.

{¶ 14} The dissent cites *State v. Blackburn*, 11th Dist. No. 2001-T-0052, 2003-Ohio-605, for the proposition that the failure to define purpose was not plain error because some dictionary definitions of purpose are similar to the definition set forth in the Ohio Jury Instructions and by statute. However, the jurors in this case, as in all cases, were not permitted to conduct legal or other research independent of the judge's instructions. They would not, therefore, have had access to a dictionary any more than they had access to the definitions contained in the Ohio Revised Code or the Ohio Jury Instructions. The jurors were instructed, "You are not permitted * * * to apply your own conception of what you think the law should be." (Tr. Vol. II, 269.) Moreover, the *Blackburn* case concerned a defendant who climbed through the victim's window with a gun, ripped the telephone out of the wall as she attempted to call 911, and then held her at gunpoint and forced her to tell the police officers who arrived in response to the abortive 911 call that everything was fine. *Blackburn* at ¶ 3-4. On those facts, there was little room for confusion about whether the defendant had trespassed in the victim's home with a purpose "to commit * * * any criminal offense." R.C. 2911.11. Thus, it is not surprising that the Eleventh District Court of Appeals concluded that the defendant in *Blackburn* had not been prejudiced by the omitted definition and that the outcome had not been affected. *See Rogers* at ¶ 22. As earlier noted, the facts adduced before the jury in this case were ambiguous as to Woods' intent when he made contact with the officer, whether to put his arm around the officer, or to hug him, or to grab the firearm, and thus, in this case, we believe that the erroneous omission of the definition of purpose did prejudice Woods and did affect the outcome. *See Id.* at ¶ 3.

{¶ 15} Accordingly, we find plain error and sustain Woods' second assignment of error.

### B. Third Assignment of Error – Ineffective Assistance

{¶ 16} To establish a claim of ineffective assistance of counsel, a litigant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing

defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶ 17} According to *Rogers*, the prejudice inquiry for plain error and ineffective assistance of counsel is the same. *Rogers* at ¶ 22. The failure to have requested that the jury be instructed on the legal, specific meaning of "purpose" (or to have objected to its omission from the instruction) prejudiced Woods, assuming the trial court would have so instructed the jury. Therefore, according to *Strickland*, prejudice has been shown. However, based on the facts in this case, we do not find that Woods' counsel's performance was deficient under *Strickland* because, in addition to the obstruction charge, Woods was facing an aggravated robbery charge. Part of proving aggravated robbery under the facts of this case involved proof that Woods intended to deprive Officer Rogerson of his gun when he made contact with him. *See, e.g.*, R.C. 2911.01(B); R.C. 2913.01(C).[2] Touching Officer Rogerson or his gun in circumstances where Woods did not intend to remove or withhold the gun in the ways defined by statute, would not have constituted aggravated robbery. R.C. 2911.01(B). Officers Rogerson and Drake testified that Woods said, "[l]et me get that gun" or "[g]imme your gun." (Tr. Vol. I, 85, 137.) However, this testimony differed from that of the other witnesses as detailed previously. Under the circumstances, defense counsel could have legitimately chosen not to focus the jury's attention on the meaning of "purpose" to avoid a conviction for aggravated robbery, a significantly more serious offense. Accordingly, we cannot say that counsel performed deficiently in failing to request or object to a purpose instruction.

---

[2] R.C. 2913.01(C) "Deprive" means to do any of the following:

> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
>
> (2) Dispose of property so as to make it unlikely that the owner will recover it;
>
> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

{¶ 18}  Therefore, we overrule Woods' third assignment of error.

## C. First Assignment of Error – Sufficiency and Manifest Weight

{¶ 19}  Because we reverse based on the failure to instruct the jury as to the definition of "purpose" in the crime of obstruction, the manifest weight analysis becomes moot.  However, the Supreme Court has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' "  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.  We emphasize this distinction because "the Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding that the conviction was against the weight of the evidence.  However, retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction."  *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 47 (1982).  Since we sustain the assignment of error relating to the jury instruction, which requires that the conviction and sentence be vacated, there is no need to consider Woods' claim that his conviction was against the manifest weight of the evidence.  As to the question of whether Woods' conviction was or was not supported by sufficient evidence we find there was evidence which, if believed, could have permitted (though by no means required) a jury to infer the requisite purpose on Woods' part, had the jury been instructed that the defendant had to be found by the jury on the evidence to hold "a specific intention to [prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity]."  *Ohio Jury Instructions*, CR Section 417.01; R.C. 2921.31(A); *see also Ohio Jury Instructions*, CR Section 521.31; R.C. 2901.22(A).

{¶ 20}  Accordingly, we find Woods' first assignment of error moot and therefore overruled.

## IV. CONCLUSION

{¶ 21}  We overrule appellant's third assignment of error as to ineffective assistance of counsel and that portion of appellant's first assignment of error relating to sufficiency of the evidence.  We find the first assignment of error moot insofar as it addresses manifest weight because we sustain the second assignment of error finding that the failure

to define "purpose" for the jury under the circumstances of this case constitutes plain error upon which the decision of the trial court must be reversed.

*Judgment reversed;*
*cause remanded.*

HORTON, J., concurs.
KLATT, J., dissents.

KLATT, J., dissenting.

{¶ 22} While I agree with the majority decision's resolution of appellant's first and third assignments of error, I do not agree that the trial court's failure to define the term "purpose" in this case constituted plain error. Therefore, I respectfully dissent.

{¶ 23} The state concedes that the trial court should have provided the jury with the statutory definition of the word purpose. Nevertheless, because the ordinary common-use definition of the word purpose is very similar to the statutory definition, I would conclude that the failure to provide this instruction did not affect the outcome of the trial so as to constitute plain error. This conclusion is supported by a number of appellate decisions.

{¶ 24} In an appeal from an aggravated burglary conviction, for which "purpose" is the requisite mental state, the Eleventh District Court of Appeals concluded in *State v. Blackburn*, 11th Dist. No. 2001-T-0052, 2003-Ohio-605, that the trial court's failure to provide the legal definition of the term "purposely"[3] was not plain error because that definition is so similar to the lay definition. *Id.* at ¶ 18-20. The court also did not believe that the result of the trial would have been any different if the jury had been properly instructed. *Id.*; s*ee also State v. Wilhelm*, 5th Dist. No. 03CA25, 2004-Ohio-40, ¶ 30-31 (omission of "unlawful threat of harm" definition not plain error because dictionary definition was sufficient and no demonstration that result would have been different with definition); *State v. Petty*, 10th Dist. No. 11AP-716, 2012-Ohio-2989, 16-18 (same analysis for the omission of "cause" definition).

{¶ 25} The court in *Blackburn* noted that the lay definition of purpose is "1. The object toward which one strives or for which something exists; goal; aim. 2. A result or

---

[3] Because purposely is an adverb and purpose is a noun, the form of the word may change depending on the context, however, the definition remains the same.

effect that is intended or desired. 3. Determination, resolution. 4. The matter at hand; point at issue." *Id.* at ¶ 18, quoting *The American Heritage Dictionary* 1006 (2d Ed.1991). Similarly, another dictionary defines that term as "the reason why something is done or used; the aim or intention of something; the feeling of being determined to do or achieve something; the aim or goal of a person; what a person is trying to do." *Merrian-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/purpose (accessed Nov. 12, 2015). These lay definitions are consistent with the statutory definition, which states: "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). In light of the similarities in the statutory and lay definitions of the word purpose, the failure of the trial court to define that term was not plain error.

{¶ 26} Additionally, appellant does not explain how the trial court's provision of the legal definition of the word purpose would have affected the outcome of his trial. Appellant's only argument in this regard is that the jury "could well have acquitted him" of the charge, but he does not provide any analysis or rationale for that argument. The majority's discussion of a possible intoxication defense is merely hypothetical because appellant made no such argument at trial. Appellant presented a factual defense at trial. He presented evidence that he did not grab the officer's gun. The majority decision highlights this evidence in finding plain error. But this evidence is not relevant to the plain error analysis because it has nothing to do with the purpose of appellant's conduct. Purpose only becomes an issue after the jury determines that appellant grabbed the officer's gun. Moreover, under either the statutory or lay definition, a reasonable jury could conclude that appellant purposefully obstructed and impeded the officer's access to his weapon when he grabbed the officer's gun.

{¶ 27} In order to find appellant guilty of obstructing official business in violation of R.C. 2921.31(A), the state had to prove: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege. *State v. Dice*, 3d Dist. No. 9-04-41,

2005-Ohio-2505, ¶ 19; *State v. Brickner-Latham*, 3d Dist. No. 13-05-26, 2006-Ohio-609, ¶ 25.  *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, ¶ 21 (10th Dist.).  "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, ¶ 12 (1st Dist.).

{¶ 28} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."  R.C. 2901.22(A).  " 'Because no one can know the mind of another, a defendant's intent is not discernible through objective proof.' "  *State v. McCoy,* 2d Dist. No. 22479, 2008-Ohio-5648, ¶ 14, quoting *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus.  Rather, a defendant's intent in acting is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence.  *Id.*; *State v. Puterbaugh*, 142 Ohio App.3d 185, 189 (4th Dist.2001), citing *State v. Hardin*, 16 Ohio App.3d 243, 245 (1984); *State v. Grooms*, 10th Dist. No. 03AP-1244, 2005-Ohio-706, ¶ 18.

{¶ 29} Although appellant's witnesses disputed that appellant grabbed the officer's gun, Officer Rogerson testified that before appellant approached him, he heard appellant say "let me get that gun."  (Tr. 137.)  Officer Rogerson then felt something pull "violently" at his gun and put his hand on top of the hand that was on his gun.  Similarly, Officer Drake heard the appellant say "[g]imme your gun" and then saw appellant's hand on his right side, near his gun.  (Tr. 90.)  This testimony allows reasonable minds to conclude that appellant intentionally reached for and grabbed Officer Rogerson's gun.  That intentional conduct impeded Officer Rogerson's access to his gun, thereby preventing or obstructing him from performing his lawful duty as a police officer.  *See Parma v. Kline*, 8th Dist. No. 83427, 2004-Ohio-6091, ¶ 43; *State v. Birinyi*, 8th Dist. No. 95680, 2011-Ohio-6257, ¶ 40.  Once the jury determined that appellant grabbed the officer's gun, I do not believe the trial court's failure to provide the statutory definition of the word purpose affected the outcome of the case because that definition is consistent with the commonly understood meaning of the word.

{¶ 30} For the reasons previously noted, I do not believe the trial court's failure to provide the jury the statutory definition of the word purpose affected the outcome of the case.  Therefore, I do not believe that failure constituted plain error.  Because the majority concludes otherwise, I respectfully dissent.

————