[Cite as *State v. Williams*, 2021-Ohio-4200.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 2021 CA 00014 |
| CHAD L. WILLIAMS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Fairfield County
                               Municipal Court, Case No. 20 CRB 1699

JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        November 29, 2021

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

DAVID R. KLEMP                        MARY ANN BOONE
City of Lancaster Law Director &      1223 North Columbus Street
Prosecutor's Office                   Lancaster, Ohio 43130
136 West Main Street
Lancaster, Ohio 43130

*Hoffman, J.*

**{¶1}** Defendant-appellant Chad L. Williams appeals the March 23, 2021 Final Judgment Entry entered by the Fairfield County Municipal Court, convicting and sentencing him on one count of obstructing official business and one count of resisting arrest, following a bench trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On December 3, 2020, Appellant was charged by affidavits with one count of obstructing official business, in violation of R.C. 2921.31, a misdemeanor of the second degree; and one count of resisting arrest, in violation of R.C. 2921.33, a misdemeanor of the second degree.  Appellant appeared before the trial court on the same day and entered a plea of not guilty to each charge.  The trial court released Appellant on his own recognizance.  Appellant waived his right to a speedy trial on December 4, 2020.

**{¶3}** Appellant filed a jury demand on December 21, 2020. The trial court scheduled the matter for trial on March 23, 2021.  Appellant subsequently waived his right to jury trial and elected to be tried by the trial court.

**{¶4}** Officer Adam Dilley of the Lancaster Police Department testified he was working the night shift on December 3, 2020, when he was called to 820 Washington Avenue, Lancaster, Fairfield County, Ohio, for a "removal."  Officer Dilley stated the reporting party advised dispatch a man had broken into the home through a window and she wanted him removed from the residence.  The man was subsequently identified as Appellant.  When Officer Dilley and Officer Eveland approached, they heard a man yelling from inside the home.  They also heard a female voice.

**{¶5}** Officer Diley stated Officer Eveland made contact and asked everyone to step out of the house.  Two females exited the residence and informed the officers

Appellant was sitting inside. One of the females, Cheryl Snoke, explained Appellant was her ex-boyfriend and he had not lived at the residence in two months. She indicated Appellant had entered the home through a window and she let Appellant know he was not welcomed. Snoke described Appellant's behavior as erratic and she was frightened because he was not acting normally. Officers Eveland and Lindsey asked Appellant to step out of the house, but he refused. Officer Dilley entered the residence and made contact with Appellant, whom he described as "pretty erratic, kind of high strung…obviously upset, refusing really to have anything to do with us." March 23, 2021 Trial Tr. at 15.

{¶6} The video from Officer Dilley's body camera was played for the trial court. The video shows Officer Dilley approaching the residence. Officers Eveland and Lindsey are also at the scene. One of the officers knocks on the door and asks the occupants to step outside. The two females exit the residence. Appellant can be heard saying, "I don't want to come out." Snoke advises Officer Dilley Appellant broke in through a window. Snoke indicates Appellant has not lived there in two months. She tells the officer, "He's scaring me." Shouting can be heard from inside the residence. Officer Dilley enters. Officers Eveland and Lindsey order Appellant to get on his stomach, but he refuses. A physical altercation ensues. Officer Dilley tells Appellant he is being detained and to stop resisting. The three officers struggle to get Appellant to comply. Appellant is ultimately tasered and handcuffed. Throughout the video, Appellant can be heard cursing at the officers.

{¶7} Officer Brandon Eveland testified he was working the night shift on December 3, 2020, when he was dispatched to 820 Washington Avenue to investigate a

possible trespassing situation. Officer Eveland stated Cheryl Snoke called the Lancaster Police Department and advised Appellant had broken into her residence and she wanted him removed. When Officer Eveland arrived at the scene, he exited his patrol vehicle and approached the residence. The officer "heard an active dispute going on inside the residence between two unknown individuals inside." *Id.* at 35. Officer Eveland could not discern what was being said, but could hear screaming. He announced his presence.

{¶8} Snoke and her friend, Kirby Eve Douglas, exited the residence. Snoke told the officer Appellant had broken into the residence and was not coming out. Snoke stated Appellant had lived with her two months prior, but had since moved out. Officer Eveland explained he ordered everyone out of the residence for officer safety and to separate the individuals. Officer Eveland indicated Appellant remained in the residence and he failed to comply with "multiple, lawful orders to exit." *Id.* at 37.

{¶9} The officers entered the residence and gave Appellant several more opportunities to exit. Appellant continued to refuse. When the officers attempted to detain Appellant, Appellant "began to actively resist." *Id.* at 38. Officer Eveland stated Appellant appeared to be under the influence of drugs, adding "he was hyperactive. He had jerking movements. His voice was raised. He was very agitated for – We couldn't even determine why he was so upset." *Id.* A struggle ensued. Appellant "pulled officers onto him." *Id.* at 39. "A Taser was deployed because his active resistance was too much for the joint manipulation" and the officers "had to move to the next level of force." *Id.* The officers were eventually able to restrain and cuff Appellant. During the struggle, Officer Eveland was knocked against the door.

**{¶10}** Video from Officer Eveland's body camera was played. The officers approach the house. Officer Eveland knocks on the front door, announces their presence, and asks the occupants to step outside. Officer Eveland asks Appellant four times to step out of the house. Each time, Appellant refuses, asserting, "By law, I don't have to come out. I'm staying in here." Officer Eveland advises Appellant he is going to be detained. Officers Eveland and Lindsay enter the residence. The officers attempt to place Appellant in handcuffs, but Appellant resists, fighting with the officers. A physical altercation ensues. One of the officers tasers Appellant. The officers continue to order Appellant to calm down and roll onto his stomach. The officers are finally able to handcuff Appellant. Snokes is hysterical, screaming at the officers. The officers tell Snoke Appellant assaulted them. Appellant responds, "I did nothing, but sit here and eat. I live here." The officers eventually get Appellant on his feet and escort him to a cruiser. Appellant can be heard cursing at the officers throughout the video.

**{¶11}** A second portion of the video depicts the officers' conversation with Snoke. Snoke states Appellant knocked on all three doors, but she would not let him in. Snoke explains Appellant forced his way into residence through a broken window. Snoke continues, once inside, Appellant made food and went into living room and sat down. Snoke advises the officers she repeatedly told Appellant to leave, and because he refused, she contacted the police.

**{¶12}** At the close of the state's case, Appellant made an oral Crim. R. 29 motion for acquittal. The trial court denied the motion, finding there was sufficient evidence to move the matter forward.

{¶13} Appellant testified he and Snoke had been in a relationship for two years, but were no longer together.   Appellant stated he and Snoke had an argument a couple of months before the incident and he was going to move out, however, he continued to spend every night at the residence and "never technically moved out." *Id.* at 57.  On the day of the incident, Appellant was outside the residence, working on his truck.  Appellant recalled it was a cold day.  According to Appellant, while he was outside working on his truck, Snoke locked him out of the house.  He explained, "She wouldn't let me in the house and I was kind of hungry and it was my food and she's sitting there eating while she's talking to me outside the door.  I'm standing outside freezing, she's sitting at the door laughing at me while I'm [sic] eating my food."  *Id.* at 59.

{¶14} Appellant testified he was inside, eating, when the officers arrived.  The officers knocked on the door and Appellant instructed Kirby to let them in.  The officers asked Appellant to exit the residence, but Appellant told them, "[H]ey, you guys come in and talk to me, but I'm not going outside, I'm freezing already and eating my food." *Id.* at 58.  Appellant indicated he was willing to answer any questions asked by the officers.

{¶15} On cross-examination, Appellant admitted the police had removed him from the residence a couple of days prior to the incident.  Appellant attempted to clarify, adding the police did not remove him, but he had left on his own.  With respect to the December 3, 2020 incident, Appellant insisted he did not refuse to leave the house. Appellant explained, "I didn't refuse to leave the house because I lived there.  How did I refuse?" *Id.* at 62.  Appellant added he was not "going to leave my house."  *Id.*  Appellant stated he did not hear the officers tell him he would be detained if he did not follow orders and exit

the residence.  Appellant explained he was not trying to resist, but was trying to prevent the officers from hurting him.

{¶16} After hearing all the evidence, the trial court found Appellant guilty of both counts.  The trial court sentenced Appellant to 90 days in jail on each count and ordered the sentences be served consecutively.  The trial court suspended 70 days of each sentence.  The trial court memorialized Appellant's convictions and sentence via Final Judgment Entry filed March 23, 2021.

{¶17} It is from this judgment entry Appellant appeals, raising as error:


I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING DEFENDANT'S MOTION FOR AQUITAL (SIC) UNDER CRIMINAL RULE 29 FOR OBSTRUCTING OFFICIAL BUSINESS, AFTER THE CONCLUSION OF THE STATE'S CASE (T.p. Page 53-55) AND ERRED AS A MATTER OF LAW IN FINDING DEFENDANT GUILTY OF OBSTRUCTING OFFICIAL BUSINESS IN VIOLATION OF OHIO REVISED CODE SECTION 2921.31, AS SUCH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AT THE CONCLUSION OF THE TRIAL, AS THE STATE DID NOT MEET EACH AND EVERY ELEMENT OF THE STATUTE. (T.p. Page 71-73)

II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING DEFENDANT'S MOTION FOR AQUITAL (SIC) UNDER CRIMINAL RULE 29 FOR RESISTING ARREST, AFTER THE CONCLUSION OF THE STATE'S CASE (T.p. Page 53-55) AND ERRED

AS A MATTER OF LAW IN FINDING DEFENDANT GUILTY OF RESISTING ARREST IN VIOLATION OF OHIO REVISED CODE SECTION 2921.33, AS SUCH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AT THE CONCLUSION OF THE TRIAL, AS THE STATE DID NOT MEET EACH AND EVERY ELEMENT OF THE STATUTE. (T.p. Page 71-73)

## STANDARD OF REVIEW

**{¶18}** A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue*, 5th Dist. Stark No. 2001CA00250, 2002–Ohio–351, *citing State v. Williams*, 74 Ohio St.3d 569, 576, 1996–Ohio–91, 660 N.E.2d 724. Crim. R. 29(A) allows a trial court to enter a judgment of acquittal when the State's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the state, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007–CA–00022, 2007–Ohio–4649 at ¶ 12, *citing State v. Dennis,* 79 Ohio St.3d 421, 1997–Ohio–372, 683 N.E.2d 1096.

**{¶19}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶20}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶22}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

*Obstructing Official Business*

**{¶23}** Appellant was convicted of obstructing official business, in violation of R.C. 2921.31:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶24}** Appellant claims he "did not do anything that would impede the officers from doing their duty." Brief of Appellant at 7. Appellant adds, "The only thing [he] did not do is move outside the house when told to, which is not an overate [sic] act. * * * He was not refusing to answer officer's questions." *Id.*

**{¶25}** "Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's duties * * *." *State v. Gillam*, 2d Dist. Montgomery No. 27998, 2019-Ohio-808, ¶ 15 (Citation omitted). See, also, *State v. Brooks,* 5th Dist. Knox No. 06CA000024, 2007-Ohio-4025. "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 12.

**{¶26}** We find Appellant's repeated failure to comply with the officers' requests to exit the house, under these circumstances, constituted affirmative acts which supported a conviction for obstructing official business. While not every act of omission may constitute an overt act, we find Appellant's repeated failure to comply with a direct lawful order is equivalent to an overt act in this case. The officers instructed Appellant four times to exit the residence, he refused and ultimately became belligerent.

**{¶27}** In *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, this Court found interference with an investigation under similar circumstances rose to the level of obstructing official business:

For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz,* 12th Dist. Butler No. CA97–05–108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to constitute an act for an obstructing official business conviction. *City of Warren v. Lucas,* 11th Dist. Trumbull No. 99–T–0019, 2000 WL 655446 (May 19, 2000).

**{¶28}** *Id.* at ¶ 31 (Citation omitted).

**{¶29}** Upon review of the entire record including the videos from Officers Dilley and Eveland's body cameras, we find Appellant's persistent disregard of the orders of the officers to exit the residence was sufficient evidence from which the trial court as the trier of fact could conclude he acted with the specific intent to prevent, obstruct, or delay the officers in their lawful duties. Accordingly, we find the trial court did not err in denying Appellant's Crim. R 29 motion for acquittal on the obstructing official business charge. We further find Appellant's conviction was not against the manifest weight of the evidence.

**{¶30}** Appellant's first assignment of error is overruled.

*Resisting Arrest*

**{¶31}** Appellant was also convicted of resisting arrest, in violation of R.C. 2921.33:

(A) No person, recklessly or by force, shall resist or interfere with a

lawful arrest of the person or another.

**{¶32}** Appellant contends the state failed to prove the essential elements of the offense of resisting arrest. Specifically, Appellant submits the officers did not have the intent to arrest Appellant at the time they entered the residence; therefore, there was no lawful arrest. Appellant further argues the officers did not have probable cause to arrest Appellant.

**{¶33}** An element of resisting arrest is a lawful arrest, however, "[t]he arresting officer must only have probable cause to believe that the defendant's conduct, for which the arrest is being made, amounted to an offense." *State v. Wooden*, 11th Dist. Portage No. 2003-P-0035, 2004-Ohio-5514, ¶ 32. "Probable cause for an arrest exists if reasonable, trustworthy facts and circumstances within the arresting officer's knowledge would warrant a person to believe that the suspect had committed or was committing an offense." *Id.* at ¶ 33. "In determining the lawfulness of an arrest, a court need not find that the elements of the underlying charge have been proven, but there must exist a 'reasonable basis' for the arrest." *State v. Thompson*, 116 Ohio App.3d 740, 743, 689 N.E.2d 86 (1st Dist. 1996).

**{¶34}** Upon review of the entire record including the videos from Officers Dilley and Eveland's body cameras, we find there was probable cause to arrest Appellant at the time the officers informed him they were detaining him after he refused to comply with their requests. The testimony and video establish Appellant repeatedly pushed the officers away from him and physically struggled with them. Appellant would not comply

with any of their commands. He failed to cooperated even after the officers tasered him.

Accordingly, we find the trial court did not err in denying Appellant's Crim. R. 29 motion

for acquittal on the charge of resisting arrest.  We further find Appellant's conviction was

not against the manifest weight of the evidence.

{¶35}  The judgment of the Fairfield County Municipal Court is affirmed.


By: Hoffman, J.

Baldwin, P.J.  and

Wise, Earle, J. concur